# 22-951(L)

## 22-1076(XAP)

# United States Court of Appeals
# for the Second Circuit

COMPASSCARE, a New York nonprofit corporation, NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, DBA NIFLA, a Virginia corporation, FIRST BIBLE BAPTIST CHURCH, a New York nonprofit corporation,

*Plaintiffs-Appellants-Cross-Appellees*,

v.

KATHY HOCHUL, in her official capacity as the Governor of the State of New York, ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York, LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

*Defendants-Appellees-Cross-Appellants*.

On Appeal from the United States District Court
for the Northern District of New York

## BRIEF FOR APPELLEES-CROSS-APPELLANTS

BARBARA D. UNDERWOOD
  *Solicitor General*
GALEN LEIGH SHERWIN
  *Special Counsel*
   *for Reproductive Justice*
ANDREA OSER
  *Deputy Solicitor General*
LAURA ETLINGER
  *Assistant Solicitor General*
   *of Counsel*

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellees-Cross-Appellants
The Capitol
Albany, New York 12224
(518) 776-2028

Dated: July 6, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................iii

PRELIMINARY STATEMENT ......................................................III

QUESTIONS PRESENTED ............................................................3

APPELLATE JURISDICTION ......................................................4

STANDARD OF REVIEW................................................................4

STATEMENT OF THE CASE ........................................................5

    A.   New York Labor Law § 203-e ........................................5

    B.   Proceedings Below ..........................................................8

        1.   Preliminary Proceedings ......................................8

        2.   The District Court's Order Dismissing All But the Free-Speech Challenge to the Notice Provision ..............12

        3.   The Summary Judgment Proceedings ............................12

        4.   The District Court's Decision Granting Plaintiffs Summary Judgment on the Notice Provision ................15

        5.   This Appeal and Cross-Appeal and the Court's Decision in *Slattery v. Hochul* ........................................17

SUMMARY OF ARGUMENT ................................................................20

ARGUMENT ............................................................................................23

POINT I

    *SLATTERY* CONTROLS PLAINTIFFS' FREE-EXERCISE AND FREE-SPEECH CHALLENGES TO THE CORE PROVISIONS IN LABOR LAW § 203-E, AND THOSE CHALLENGES WERE THUS PROPERLY DISMISSED FOR FAILURE TO STATE A CLAIM ........................................23

i

**Page**

POINT II

    NOTWITHSTANDING *SLATTERY*, PLAINTIFFS FAILED TO STATE A
CLAIM THAT LABOR LAW § 203-E'S CORE PROVISIONS VIOLATE
THEIR RIGHT TO EXPRESSIVE ASSOCIATION .......................................... 26

    A.    *Slattery* Does Not Bar the Court from Deciding This
Issue. ..................................................................................... 27

    B.    Plaintiffs Cannot State an Expressive-Association Claim
Because the Right of Expressive Association Does Not
Extend to the Employment Context. ...................................... 31

    C.    Even If Plaintiffs Plausibly Pleaded an Expressive-
Association Claim, They Are Not Entitled to a
Preliminary Injunction Precluding Enforcement of
§ 203's Core Provisions. .......................................................... 39

POINT III

    AS TO DEFENDANTS' CROSS-APPEAL, LABOR LAW § 203-E'S NOTICE
PROVISION DOES NOT VIOLATE PLAINTIFFS' RIGHT TO FREE
SPEECH OR FREE EXERCISE OF RELIGION .............................................. 47

    A.    The Notice Provision Does Not Violate Plaintiffs' Right
to Free Speech ......................................................................... 47

    B.    The Notice Provision Is Generally Applicable and
Provides No Basis to Reinstate Plaintiffs' Free Exercise
Claim. ...................................................................................... 59

CONCLUSION ........................................................................................ 61

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*303 Creative LLC v. Elenis*,
  No. 21-476, 2023 U.S. LEXIS 2794 (June 30, 2023) .............. 24-25, 51

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................ 4

*Bear Creek Bible Church v. EEOC*,
  571 F. Supp 3d 571 (N.D. Tex. 2021)................................................ 36

*Billard v. Charlotte Catholic High Sch.*,
  No. 3:17-cv-00011, 2021 U.S. Dist. LEXIS 167418
  (W.D.N.C. Sept. 3, 2021)...................................................................... 36

*Board of Directors of Rotary Intl. v. Rotary Club of Duarte*,
  481 U.S. 537 (1987).............................................................................. 32

*Boy Scouts of America v. Dale*,
  530 U.S. 640 (2000)........................................................ 28, 32, 37, 41

*Boy Scouts of America v. Wyman*,
  335 F.3d 80 (2d Cir. 2003) ................................................................ 41

*Braidwood Mgmt. v. EEOC*,
  No. 22-10145, 2023 U.S. App. LEXIS 15378
  (5th Cir. June 20, 2023) ...................................................................... 36

*Chicago Area Council of Boy Scouts of Am. v. City of Chicago
  Comm'n on Hum. Relations*,
  322 Ill. App. 3d 17 (2001)................................................................... 42

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
  508 U.S. 520 (1993)............................................................................. 60

*Fitzgerald v. Roncalli High Sch.*,
  No. 1:19-cv-04291, 2021 U.S. Dist. LEXIS 206826
  (S.D. Ind. March 31, 2021)................................................................... 36

iii

**Cases**                                                                             **Page(s)**

*Fulton v. Philadelphia*,
141 S. Ct. 1868 (2021) ........................................................ 60

*Getty Petroleum Corp. v. Bartco Petroleum Corp.*,
858 F.2d 103 (2d Cir. 1988) ............................................... 27

*Goldberger v. Integrated Resources*,
209 F.3d 43 (2d Cir. 2000) ................................................. 27

*Higazy v. Templeton*,
505 F.3d 161 (2d Cir. 2007) ................................................. 8

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ............................................................. 33

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012) ...................................................... 37, 46

*Hurley v. Irish-American Gay, Lesbian and
Bisexual Group of Boston*,
515 U.S. 557 (1995) ........................................................... 33

*Lake Butler Apparel Co. v. Sec'y of Labor*,
519 F.2d 84 (5th Cir. 1975) .......................................... 49, 53-54

*LoSacco v. City of Middletown*,
71 F.3d 88 (2d Cir. 1995) ..................................................... 8

*Nat'l Ass'n of Mfrs. v. NLRB*,
717 F.3d 947 (D.C. Cir. 2015) ............................................ 50

*Nat'l Ass'n of Mfrs. v. Perez*,
103 F. Supp. 3d 7 (D.D.C. 2013) ......................................... 49

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*,
272 F.3d 104 (2d Cir. 2001) ............................................ 50-51

*National Institute of Family & Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018) ................................................. 16, 54-55

iv

**Cases**                                                                **Page(s)**

*New Hope Family Services v. Poole,*
966 F.3d 145 (2d Cir. 2020) ............................................................ 30

*New York State Club Assn. v. City of New York,*
487 U.S. 1 (1988)............................................................................. 32-33

*New York State Rest. Ass'n v. N.Y. City Bd. of Health,*
556 F.3d 114 (2d Cir. 2009) ............................................................ 50

*North Am. Soccer League, LLC v. United States Soccer Fedn.,*
883 F.3d 32 (2d Cir. 2018) .............................................................. 5

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
140 S. Ct. 2049 (2020)..................................................................... 46

*Palin v. New York Times Co.,*
940 F.3d 804 (2d Cir. 2019) ............................................................ 4

*Penn v. New York Methodist Hosp.,*
884 F.3d 416 (2d Cir. 2018) ............................................................ 47

*Picard v. Magliano,*
42 F.4th 89 (2d Cir. 2022).............................................................. 58

*Richardson v. Northwest Christian Univ.,*
242 F. Supp. 3d 1132 (D. Or. 2017) ............................................... 36

*Roberts v. United States Jaycees,*
468 U.S. 609 (1984)........................................................... 32, 34, 38

*SAM Party of N.Y. v. Kosinski,*
987 F.3d 267 (2021) ........................................................................ 39-40

*Slattery v. Hochul,*
61 F.4th 278 (2d Cir. 2023)...................................................... passim

*Starkey v Roman Catholic Archdiocese of Indianapolis,*
496 F. Supp 3d 1195 (S.D. Ind. 2020)............................................ 36

v

| Cases | Page(s) |
|---|---|

*Sunward Electronics v. McDonald,*
   362 F.3d 17 (2d Cir. 2004) ................................................................ 46

*Sussman v. Crawford,*
   488 F.3d 136 (2007) ........................................................................ 39

*Terwilliger v. Terwilliger,*
   206 F.3d 240 (2d Cir. 2000) ............................................................... 5

*UAW-Labor Empl. & Training Corp. v. Chao,*
   325 F.3d 360 (D.C. Cir. 2003) .......................................................... 49

*Webster v. Fall,*
   266 U.S. 507 (1925) ......................................................................... 28

*West Coast Hotel Co. v Parrish,*
   300 U.S. 379 (1937) ......................................................................... 34

*Wisconsin v. Mitchell,*
   508 U.S. 476 (1993) ......................................................................... 33

**Laws**

*Federal*

28 U.S.C. § 1291 ............................................................................... 4

42 U.S.C.
   §§ 2000e–2000e17 .......................................................................... 35
   § 2000e-1 ...................................................................................... 35

*New York*

Ch. 556, 2019 McKinney's N.Y. Laws 1523 ............................................. 8

Labor Law
   § 191 ............................................................................................ 35
   § 195 ............................................................................................ 48
   § 203-e .................................................................................... passim

**Laws**                                                                **Page(s)**

*New York (cont'd)*

Labor Law
    § 652 .................................................................... 35
    § 876 .................................................................... 48

*Other States*

Del. Code tit. 19, § 711 ................................................. 31

Haw. Rev. Stat. § 378-2 ............................................... 31

**Regulations & Rules**

*Federal*

29 C.F.R.
    pt. 19010.............................................................. 35
    § 825.300 ............................................................ 48
    § 1903.2 .............................................................. 48

Fed. R. App. P. 4 .......................................................... 4

*New York*

9 N.Y.C.R.R. § 466.1 .................................................. 48

N.Y.C. Admin. Code § 8-107 ....................................... 31

**Miscellaneous Authorities**

N.Y. Dep't of Lab., *Posting Requirements* (n.d.),
    https://dol.ny.gov/posting-requirements-0 ....................... 49

52 N.Y. Jur. 2d Employment Relations § 3(2) ...................... 35

## PRELIMINARY STATEMENT

Plaintiffs CompassCare, National Institute of Family and Life Advocates (NIFLA), and First Bible Baptist Church (First Bible) brought this pre-enforcement challenge to New York State Labor Law § 203-e, which prohibits employers from discriminating against employees on the basis of their personal reproductive health decisions. They assert that the law violates their rights to free exercise, free speech, and expressive association. They appeal from an order of the District Court for the Northern District of New York (McAvoy, J.) dismissing their challenges to the law's anti-discrimination, anti-retaliation, and no-waiver provisions and denying a preliminary injunction as to those provisions. Defendants—Governor Kathy Hochul, Attorney General Letitia James, and New York State Department of Labor Commissioner Roberta Reardon—cross-appeal from the subsequent judgment of the district court that granted plaintiffs summary judgment on their claim that the notice provision of the law violates plaintiffs' right to free speech and permanently enjoined enforcement of that provision against all employers. The Court should reverse the judgment in plaintiffs' favor as to the notice provision and otherwise affirm.

In *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023), the Court recently rejected the same free-speech and free-exercise challenges to § 203-e's anti-discrimination, anti-retaliation, and no-waiver provisions. That decision controls as to those claims. While the Court in *Slattery* also held that the plaintiff there plausibly alleged that those provisions burdened its right of expressive association, that conclusion does not resolve the expressive-association claim asserted here, because defendants assert a basis for dismissal of that claim that was neither briefed nor addressed in *Slattery*, namely that the expressive-association precedents involving non-commercial associations do not apply to the commercial relationship between an employer and its employees. Plaintiffs thus cannot state a claim that the statute's provisions violate their expressive-association right, and the Court should affirm dismissal of that claim as well as the denial of the preliminary injunction sought in connection with that claim.

The Court should reverse the grant of summary judgment to plaintiffs on their claim that the notice provision of the law violates their right to free speech, as well as the entry of a permanent injunction issued in connection with that claim. As demonstrated below, the notice provision, which was not challenged in *Slattery,* does not violate

plaintiffs' free-speech or free-exercise rights, and thus provides no basis for relief, let alone a permanent injunction enjoining its enforcement against all employers.

## QUESTIONS PRESENTED

1. Whether this Court's decision in *Slattery v. Hochul* requires dismissal of plaintiffs' free-speech and free-exercise challenges to § 203-e's anti-discrimination, anti-retaliation, and no-waiver provisions.

2. Whether plaintiffs failed to state an expressive-association claim because the right of expressive association only implicitly recognized in *Slattery v. Hochul* does not extend to relationships between employers and their employees.

3. Whether, even if plaintiffs plausibly stated an expressive-association claim, they failed to establish entitlement to the broad preliminary injunctive relief sought for that claim because they failed to establish that all or even most of their employees are assigned the duty of conveying their anti-abortion message.

4. As to the defendants' cross-appeal, whether plaintiffs' challenges to § 203-e's notice provision fail as well on the basis that the provision is

3

an ordinary workplace notice requirement that neither implicates plaintiff's free-speech right nor raises free-exercise concerns.

## APPELLATE JURISDICTION

The Court has jurisdiction over the appeal and cross-appeal under 28 U.S.C. § 1291. Judgment was entered April 1, 2022, plaintiffs timely filed their notice of appeal on April 28, 2022, and defendants timely filed their notice of cross-appeal on May 12, 2022. (Joint Appendix [JA] 413-414, 416.) *See* Fed. R. App. P. 4(a)(1)(A), (3).

## STANDARD OF REVIEW

This Court reviews de novo a district court's decision granting a motion to dismiss on the pleadings, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiffs' favor. *E.g., Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). However, the Court need not credit "naked assertions," "mere conclusory statements," or "legal conclusion[s] couched as . . . factual allegation[s]." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quotation marks and citations omitted).

4

The Court also reviews de novo a district court's rulings on cross-motions for summary judgment. *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000). "Summary judgment is only appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

An order denying a motion for a preliminary injunction is reviewed for abuse of discretion, which occurs if the court "rests its decision on a clearly erroneous finding of fact or makes an error of law." *North Am. Soccer League, LLC v. United States Soccer Fedn.*, 883 F.3d 32, 36 (2d Cir. 2018).

## STATEMENT OF THE CASE

### A.    New York Labor Law § 203-e

New York protects employees by barring employers from interfering in certain private medical decisions. Specifically, Labor Law § 203-e, which became effective November 1, 2019, bars employers from discriminating or retaliating against an employee based on "the employee's or dependent's reproductive health decision making, including, but not limited to, a decision to use or access a particular drug, device, or medical service." N.Y. Labor Law § 203-e(2)(a). Section 203-e

5

was enacted to "prohibit employers from discriminating against employees based on the employees' or dependent's reproductive health decisions, and to provide remedies for such violations." (ECF No. 1-4, at 5 (Assembly sponsor's memorandum); ECF No. 1-5, at 6 (Senate sponsor's memorandum)[1].) The Legislature sought to "ensure that employees' decisions about pregnancy, contraception, and reproductive health" would be "protected under state law." (ECF Nos. 1-4, at 5 and 1-5, at 7.)

The statute reinforces the protection from discrimination with significant additional provisions. The statute bars employers from accessing "personal information regarding the employee's or the employee's dependent's reproductive health decision making." Labor Law § 203-e(1). The statute bars employers from circumventing the statute by requiring employees "to sign a waiver or other document which purports to deny an employee the right to make their own reproductive health care decisions." *Id.* § 203-e(2)(b). And the statute bars employers from retaliating against employees who exercise their rights under the statute. *Id.*

---

[1] References to "ECF No." are to documents filed in this matter in district court that are not reproduced in the Joint Appendix. They are denoted by docket entry number with pagination as provided on the PACER filing system.

6

§ 203-e(5). The statute also provides enforcement mechanisms by giving employees a private right of action to sue for injunctive relief, reinstatement, and damages, *id.* § 203-e(3), and by subjecting employers who engage in unlawful retaliation to civil penalties, *id.* § 203-e(5).

Section 203-e also requires an employer that provides an employee handbook to its employees to include in the handbook notice of employees' rights and remedies under the statute. *Id.* § 203-e(6). The notice provision allows the employer to choose the language for the notice provided. (JA321.) Because employee handbooks generally include information about workplace rights, § 203-e's notice provision ensures that such handbooks are not misleading by omission as to the existence of the employee protections that § 203-e affords. (JA321, 326.)

Finally, § 203-e contains a severability clause, providing that if any part of the law is held to be invalid, that judgment "shall not affect, impair, or invalidate the remainder thereof," but instead should be confined to the part "directly involved in the controversy" and "the person or circumstances involved." *Id.* § 203-e(7).

## B.    Proceedings Below

### 1.    Preliminary Proceedings

Plaintiffs CompassCare, First Bible, and NIFLA commenced this suit in November 2019, just days after § 203-e became effective.[2] Their pre-enforcement complaint asserted, among other things, that § 203-e violated the rights of CompassCare and First Bible, and NIFLA's relevant New York members to the freedoms of religious exercise, speech and expressive association.[3] (JA17-65.) Plaintiffs stated that they did not intend to comply with the law and sought declaratory relief, as well as injunctive relief barring the law's enforcement. (JA44-46, 48-61.)

According to the complaint, CompassCare is a pregnancy care center that supports pregnant persons with unwanted pregnancies to carry the pregnancy to term. (JA23, 25.) CompassCare provides pregnancy testing,

---

[2] The notice provision became effective 60 days after the law's original effective date of November 8, 2019, or January 7, 2020. *See* Ch. 556, § 3, 2019 McKinney's N.Y. Laws 1523, 1524.

[3] Plaintiffs additionally asserted that the statute violated their right to religious autonomy and was unconstitutionally vague. (JA54-56, 59-61.) Plaintiffs do not pursue those challenges in their brief on appeal, however, and have thereby abandoned them. *See Higazy v. Templeton*, 505 F.3d 161, 168 n.7 (2d Cir. 2007); *LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995). Accordingly, we do not address these claims further.

8

ultrasound examinations, and consultations on pregnancy, abortion, and adoption. (JA25.) CompassCare opposes abortion and the use of birth control based on Christian beliefs. (JA26-27.) It requires all of its board members, staff, and volunteers to support the organization's religious mission and its positions on abortion and birth control, and to "personally conduct themselves consistent with the Christian faith and belief that guides that mission." (JA28.) These statements are set forth in CompassCare's employee handbook, which those who serve at the organization are required to sign. (JA28.)

NIFLA is a membership organization of pregnancy care centers that oppose abortion and provide medical or non-medical services. (JA23, 30.) NIFLA asserted associational standing on behalf of its forty-one members in New York. (JA31.) NIFLA says that "[m]any" of its New York members are religious organizations whose anti-abortion position is based on a religious belief (JA30) and "[m]any" also require that their employees agree with, and agree to live by, the organization's positional or religious statements on abortion, contraceptive use, and sexual relations outside of marriage (JA31). NIFLA has a model handbook that it encourages it members to adapt and use. (JA30-31.)

First Bible is a Christian church in Hilton, New York, that also operates a school/daycare center and a recreational sports center. First Bible believes that abortion is a sin and that God commands that no sexual activity occur outside of marriage. (JA32.) It supports crisis pregnancy centers, including CompassCare. (JA33.) Its school, Northstar Christian Academy, adheres to First Bible's statement of faith and seeks to instill Christian values. (JA34.) Its athletic center, Grace and Truth Athletics and Sports Park, offers recreational sports programs for children and adults. (JA34.) At the church, the school and the athletic center, First Bible will not hire or retain pastors or employees who refuse to agree to its statement of faith and the church's teachings on sexuality and abortion, and who refuse to live out that statement in their personal lives. (JA33, 34-35.) Employees who violate the principles in its faith statement may be disciplined, including by being terminated. (JA34, 35.) As the time of the summary judgment briefing, First Bible was in the process of creating an employee handbook that would require that all pastors, directors, employees, and volunteers assent to First Bible's statement of faith. (JA45-46.)

The underlying complaint asserts that § 203-e's anti-discrimination, anti-retaliation, and no waiver provisions (collectively referred to herein as the statute's "core provisions") violate plaintiffs' rights to free exercise of religion, speech, and expressive association by requiring them to hire and employ individuals who make private reproductive health decisions that are contrary to plaintiffs' beliefs concerning abortion, contraceptives, and sexual conduct. (JA50-59.) The complaint also asserts that § 203-e's notice provision violates plaintiffs' right to free speech by compelling them to encourage employees to utilize the protections afforded by the statute, and thereby to alter the message plaintiffs wish to convey. (JA52-54.)

After filing the complaint, plaintiffs moved for a preliminary injunction (ECF No. 17), submitting affidavits from leaders of each of the plaintiff organizations more fully describing their activities and employment rules. (JA66-107.) Defendants opposed the injunction and cross-moved to dismiss the complaint for failure to state a claim. (JA 108; ECF No. 19-1, at 41-45.)

11

**2. The District Court's Order Dismissing All But the Free-Speech Challenge to the Notice Provision**

By decision and order dated June 5, 2020 (Special Appendix (SA) 1-67), the district court rejected all of plaintiffs' challenges to the law's core provisions, holding that plaintiffs failed to establish a likelihood of success on those claims, as necessary for a preliminary injunction, or even to allege facts sufficient to state such claims, as necessary to survive defendants' motion to dismiss. The court found, however, that plaintiffs established a likelihood of success on their claim that the notice provision violated their free-speech right. As to that claim, the court granted plaintiffs a preliminary injunction and denied defendants' motion to dismiss.

**3. The Summary Judgment Proceedings**

The parties engaged in limited discovery on the only remaining claim—that the notice provision violated plaintiffs' right to free speech—and then filed cross-motions for summary judgment as to that claim.

In support of their motion for summary judgment, defendants submitted copies of CompassCare's employee handbook and NIFLA's model handbook. (JA187-220, 222-253.) Both include statements that employees are required to abide by the employer's religious positional

12

statements, including the employer's anti-abortion beliefs, in employees' personal and professional conduct. (JA194, 220, 227.) Both handbooks also refer to numerous laws other than § 203-e that protect employees' rights in the workplace or describe those rights, including a reference to equal opportunities for employment. (CompassCare: JA200, 201, 202, 208, 214, 216, 217, 218; NIFLA: JA228, 234, 236, 238.)

Defendants also submitted an affidavit from Maura McCann, the Department of Labor's Director of Labor Standards, which enforces the state-law provisions requiring employers to provide employees with notice of employee rights in the workplace and remedies for violations of those rights. (JA319-327.) McCann explained that many other provisions of state and federal law require employers to provide notices to their employees, and McCann provided examples of many such requirements. (JA322-324.) She also explained that employee handbooks generally contain comprehensive information about employees' rights and benefits, such as employee health benefits, privacy of protected health information, health and safety practices, anti-discrimination policies and the like. (JA326.) And employees therefore reasonably refer to such handbooks, when provided, for information about their rights in the

13

workplace. (JA326.) Failing to include the rights protected by 203-e would thus misleadingly suggest that no such rights exist. (JA326-327.)

McCann further explained that, by specifying that employers must provide the required notice to employees about § 203-e only in employee handbooks when such handbooks are provided, § 203-e's notice provision enables employers to notify employees of their rights in a private inconspicuous manner. (JA325.) Section 203-e thereby balances the need for employees to know their rights regarding their personal reproductive health decisions against employers' potential objections to having to notify employees of those rights by conspicuously posting notices about them in the workplace. (JA325.) Further, and consistent with § 203-e's plain terms, the notice provision neither requires employers to utilize handbooks nor dictates the form of the notice that must be provided when a handbook is used. (JA321.)

Plaintiffs acknowledged the scope of the notice provision, as well as the fact that it does not require employers to express support for § 203-e's provisions. (JA377-378.) Plaintiffs nonetheless argued that the notice provision violates their right to free speech by forcing them to express a statement with which they disagree, namely, that employees have a right

14

not to be discriminated against in employment on the basis of personal reproductive health decisions. (ECF No. 41-4, at 13-15.)

Defendants countered that the notice provision did not impair plaintiffs' speech because it merely required employers to provide accurate, factual information about employees' rights, and was thus much like numerous other, well-accepted employer notice requirements. Defendants explained that for this reason, the notice provision need only be rationally related to a legitimate state interest, which it is, and argued that, in any event, it withstands strict scrutiny. (ECF No. 43-9, at 10-14, 16; ECF No. 52, at 5-6.)

### 4. The District Court's Decision Granting Plaintiffs Summary Judgment on the Notice Provision

The district court granted plaintiffs summary judgment on their free-speech challenge to the notice provision, denied defendants' summary judgment on that issue, and entered a permanent injunction enjoining enforcement of the notice provision as to *any* employer statewide.

In so doing, the court relied on portions of its earlier decision and found that the summary judgment evidence did not warrant a different

analysis. (SA86-87.) The court acknowledged that plaintiffs' challenge rested in part on their challenge to § 203-e's core provisions because plaintiffs affirmatively sought to use their handbooks to advise employees that they could engage in the very discrimination and retaliation that the statute prohibits. (SA84 & n.3.) The court also acknowledged that the notice provision did not preclude plaintiffs from voicing their opposition to § 203-e or from continuing to speak out against abortion and contraception. (SA74, 87 n.4.) And while the court acknowledged the agreed-upon fact that workplace notice requirements are common and unremarkable (SA74, 75), it did not address defendants' argument that this fact matters or acknowledge that employers could make the same objection to other workplace notice requirements.

Instead, the court reasoned that the notice provision was analogous to the conspicuous posting requirement that was found likely to violate the free-speech right of anti-abortion pregnancy centers in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA v. Becerra*"). (SA86.) And the court reasoned that a handbook statement advising employees that the law protects their reproductive

16

health decisions would require plaintiffs to promote a pro-abortion message that is contrary to their religious beliefs. (SA87.)

The court thus concluded that strict scrutiny applied and concluded further that the law did not satisfy that standard because the State had alternative and less-burdensome ways to assure that employees understood their rights, including by requiring the posting of notices at the job site. (SA88-90).

Judgment was thereafter entered granting plaintiffs' motion for summary judgment, denying defendants' motion for summary judgment, and permanently enjoining defendants from enforcing the notice provision against any employer. (JA411.)

### 5. This Appeal and Cross-Appeal and the Court's Decision in *Slattery v. Hochul*

Plaintiffs appealed the final judgment, seeking review of the court's earlier decision dismissing its constitutional challenges to § 203-e's core provisions and denying its motion for a preliminary injunction on the basis of those provisions. (JA413.) Defendants cross-appealed from the final judgment to the extent it granted plaintiffs' motion for summary

17

judgment and permanently enjoined enforcement of the notice provision. (JA416.)

Because the appeal in *Slattery v. Hochul*, a case that had been before the same district court judge and involved many of the same challenges to § 203-e, was then pending and had been fully briefed and argued, the Court granted the parties' joint motion to hold this appeal in abeyance pending the Court's decision in *Slattery*.

On February 27, 2023, the Court issued that decision. *See Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023). Like plaintiff CompassCare and the members of plaintiff NIFLA, the *Slattery* plaintiff was an organization that operated a network of pregnancy crisis centers that discourage abortion.[4] *Id.* at 284. Like plaintiffs here, the *Slattery* plaintiff sought to advertise that it "will not hire or retain employees who violate its policies against procuring abortions or engaging in extramarital sexual relations." *Id.*

---

[4] There were actually two plaintiffs in *Slattery*: the pregnancy center organization and its president. References here to the "plaintiff" in that case refer to the organization, the same convention as that adopted by the *Slattery* Court. *See* 61 F.4th at 284.

The *Slattery* plaintiff asserted all but one of the claims that plaintiffs assert here; it did not challenge § 203-e's notice provision, but, as here, asserted that § 203-e's core provisions violated its rights to free exercise, free speech and expressive association. *Id*. And, as here, the district court dismissed these claims for failure to state a claim. *Id.* at 284-85.

On appeal, the Court affirmed the dismissal of the free-exercise and free-speech claims. As to the free-exercise claim, the Court held that § 203-e is both neutral and generally applicable and is thus subject to rational-basis scrutiny, which it satisfies given its general purpose of combatting workplace discrimination and safeguarding employee privacy. *Id.* at 292-94. As to the free-speech claim, the Court held that the plaintiff's had not shown that "acts of hiring, terminating, or continuing to employ persons are themselves expressive conduct that communicates its view," and thus these acts do not implicate the right to free speech. *Id.* at 291. And because the no-waiver provision simply prevents employers from circumventing § 203-e's constraints on such acts, it does not implicate that right either. *Id.* at 291, 292.

The Court reached a different conclusion as to the expressive-association claim, finding that, at the pleadings stage, weighing all

19

reasonable inferences in their favor plaintiffs had plausibly alleged a significant burden on their right of expressive association that would not survive strict scrutiny. *Id.* at 286, 291. However, because the parties did not raise the question whether court precedents involving the expressive-association right of membership organizations apply to the employment context, the Court did not address that question, but rather assumed that those precedents governed the expressive-association claim before it. *See id.* at 286-87. The Court thus reversed dismissal of the expressive-association claim, otherwise affirmed dismissal of the complaint, and remanded to the district court for further proceedings.

Briefing in these appeals thereafter resumed.

## SUMMARY OF ARGUMENT

In *Slattery v. Hochul*, 61 F.4th 278, this Court considered the same constitutional challenges to Labor Law § 203-e's core provisions that plaintiffs press here. *Slattery* controls plaintiffs' free-exercise and free-speech challenges to those provisions and requires affirmance of the district court's rulings dismissing those challenges.

While *Slattery* also addressed, and reinstated, the expressive-association claim before it on finding that the *Slattery* plaintiff plausibly

20

alleged such a claim, that analysis does not control here. The parties in that case did not brief and *Slattery* did not expressly address the threshold question whether the right to expressive association extends to the employment context. The Court should thus address that question here and hold that the right of expressive association does not extend to the employment context because the relationship between an employer and its employees is a commercial one. Further, extending the right to expressive association to the employment context could have far-reaching consequences, allowing a myriad of employers to use the right to expressive association to evade a host of foundational employment discrimination laws. Dismissal of plaintiffs' expressive-association claim should be affirmed on this basis.

Even if plaintiffs plausibly alleged an expressive-association claim, they failed to establish that they were entitled to the broad preliminary injunction they sought in connection with that claim. Plaintiffs sought a preliminary injunction that would preclude the enforcement of § 203-e's core provisions as to all of their employees. Because plaintiffs failed to establish that all of their employees are engaged in the function of conveying plaintiffs' anti-abortion message, however, they cannot show a

21

likelihood of success on their claim as to all of their employees. The Court should therefore affirm the denial of the preliminary injunction on plaintiffs' expressive-association claim.

Finally, on defendants' cross-appeal, the Court should reverse the district court's rulings granting summary judgment to plaintiffs on their challenge to § 203-e's notice provision, denying summary judgment to defendants on that challenge, and issuing a permanent injunction enjoining enforcement of the notice provision as to all employers. Contrary to those district court rulings, the notice provision of § 203-e does not implicate plaintiffs' free-speech right. It requires only an accurate and factual statement of employee rights and remedies under the statute when an employee handbook is used. It is therefore analogous to the myriad workplace notice requirements that, under longstanding precedent, do not implicate an employer's free-speech right. Nor does the notice provision implicate plaintiffs' free-exercise right. Because the provision distinguishes only between employers that use employee handbooks and those that do not, it draws a distinction that has nothing to do with religious exercise and thus does not impermissibly burden that right.

# ARGUMENT

## POINT I

### *SLATTERY* CONTROLS PLAINTIFFS' FREE-EXERCISE AND FREE-SPEECH CHALLENGES TO THE CORE PROVISIONS IN LABOR LAW § 203-e, AND THOSE CHALLENGES WERE THUS PROPERLY DISMISSED FOR FAILURE TO STATE A CLAIM

As plaintiffs recognize, the Court's decision in *Slattery v. Hochul* forecloses plaintiffs' claims that enforcement of § 203-e's core provisions against them would violate their free-exercise and free-speech rights. (Appellants' Brief [Br.] 27, 29, 32.) Because the district court properly dismissed those claims for failure to state a claim and denied preliminary injunctive relief, its rulings should be affirmed.

As to their free-exercise claim, plaintiffs argue that § 203-e is not neutral because its legislative history suggests that the law was intended to target religious employers. (Br. 30-32.) But *Slattery* rejected this very argument, concluding that even if certain statements by individual legislators might suggest hostility toward the religious exercise of employers, those statements did not establish that the statute's purpose was to target religious conduct. 61 F.4th at 293. Indeed, *Slattery* noted that other legislative history evidenced a legislative purpose to ensure employee privacy and prevent workplace discrimination, and that the

23

legislators had correctly recognized that religious employers could use the ministerial exception to avoid the statute's application to particular employees. *Id.* And the only argument plaintiffs press concerning § 203's general applicability is directed at the notice provision (Br. 32), which is discussed *infra* Point III. *Slattery's* conclusion that the statute is neutral and generally applicable and thus warranted affirmance of the dismissal of a like free-exercise claim, controls here.

Plaintiffs argue that § 203-e's core provisions violate their right to free speech on two grounds. They argue that the anti-discrimination and anti-retaliation provisions compel speech by requiring them to employ individuals who cannot credibly promote their anti-abortion message. (Br. 27.) They also argue that the no-waiver provision acts as an improper content-based restriction on their speech. (Br. 28-29.) *Slattery* rejected these very arguments, holding that § 203-e does not implicate free-speech right because the employment decisions it affects are not expressive conduct and because the no-waiver provision does not regulate speech. 61 F.4th at 293.

The Supreme Court's recent decision in *303 Creative LLC v. Elenis*, No. 21-476, 2023 U.S. LEXIS 2794 (June 30, 2023), does not alter

*Slattery's* conclusions. In *303 Creative*, the public accommodation law at issue was held to affect what the Court found, on a stipulated record, to be "pure speech"—the petitioner's customized expressive websites designed to communicate ideas. *Id.* at *23, 32-33, 40. In contrast, *Slattery* recognized that the core provisions in § 203-e regulate conduct—employment decisions—and held that such employment decisions did not qualify as expressive conduct. *Slattery*, 61 F.4th at 291. Accordingly, *Slattery* requires affirming both the district court's dismissal of plaintiffs' free-speech challenge to § 203-e's core-provisions as well as the district court's consequent denial of a preliminary injunction based on that challenge.

# POINT II

## NOTWITHSTANDING *SLATTERY*, PLAINTIFFS FAILED TO STATE A CLAIM THAT LABOR LAW § 203-E'S CORE PROVISIONS VIOLATE THEIR RIGHT TO EXPRESSIVE ASSOCIATION

Although *Slattery* also concluded that the plaintiff pregnancy center organization plausibly alleged that § 203-e's core provisions violated its right of expressive association, *Slattery* did not expressly hold that the right of expressive association extends to an employment relationship. The parties had not even briefed the issue. The Court should thus address that issue here, and it should hold that the right of expressive association does not extend to an employment relationship. And if the right of expressive association does not extend to an employment relationship, then plaintiffs cannot plausibly allege that § 203-e violates that right. Accordingly, the Court should affirm the district court's judgment dismissing plaintiffs' expressive-association claim.

Even if the Court disagrees and reinstates that claim, it should affirm the denial of a preliminary injunction as to that claim. Plaintiffs sought injunctive relief to prevent the enforcement of § 203-e against them as to all of their employees. But plaintiffs failed to establish that

26

all of their employees are engaged in conveying their anti-abortion message. Accordingly, plaintiffs failed to establish a likelihood of success on their claim that, as to all of their employees, § 203-e imposes a severe burden on their ability to convey that message.

### A. *Slattery* Does Not Bar the Court from Deciding This Issue.

Although *Slattery* involved a plaintiff employer asserting a right of expressive association with its employees, the parties did not brief and *Slattery* did not expressly address the question whether the right to expressive association extends to the employment context, which involves an employer's commercial relationship with its employees. The Court thus remains free to consider that issue now.

Where an issue was never "'briefed, argued, or decided,'" and an "earlier panel had assumed sub silentio a resolution of the issue," the Court's prior decision is not binding precedent on that issue. *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir. 1988) (quoting *Korwek v. Hunt,* 827 F.2d 874, 877 (2d Cir. 1987)); *Goldberger v. Integrated Resources,* 209 F.3d 43, 49 (2d Cir. 2000) (citing and applying this rule). As the Supreme Court long ago cautioned,

27

"[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

In the briefs submitted to the Court in *Slattery*, the parties did not address the question whether the right to expressive association extends to the employment context. In asserting a right of expressive association with its employees, the *Slattery* plaintiff relied on precedents like *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000), that recognized the right of a voluntary membership organization engaged in expressive activity to choose the members with which it would associate, even if that meant engaging in otherwise unlawful discrimination. And on the basis of those precedents, the *Slattery* plaintiff argued that because it was similarly engaged in protected expressive activity, it could similarly engage in otherwise unlawful discrimination for purposes of deciding which individuals it would hire or retain to convey its message. *Slattery v. Hochul*, Dkt. No. 21-911, ECF No. 41, at 31-37 (2d Cir. June 15, 2021). In response, defendants assumed that plaintiff "associate[s] to engage in expressive activity" and sought to distinguish *Dale* on other grounds.

28

*Slattery v. Hochul*, Dkt. No. 21-911, ECF No. 50, at 27, 37-39 (Aug. 18, 2021). The question whether the right to expressive association extends to an employer's commercial relationship with its employees did not even arise at oral argument.[5]

Nor did the *Slattery* decision expressly address that question. Rather, the Court simply applied the expressive-association precedents without exploring whether the same considerations present in those cases apply to the employment context. *See* 61 F.4th at 286-87 (noting the potential for "'intrusion into the internal structure or affairs of an association' caused by a law "that forces the group to accept members it does not desire'" (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 622-23 (1984))). The Court thus analyzed the plaintiff's claim as if it were a membership organization being forced to associate with certain members. *Id.* at 288-89, 290 (repeatedly referring to § 203-e as affecting the plaintiff's "membership").

---

[5] The oral argument is archived at https://www.ca2.uscourts.gov/decisions/isysquery/4b07a7f9-616f-46e6-8ce4-721965211185/61-70/list/ under Docket 21-911 at date November 29, 2021.

29

Although *Slattery* also cited dictum from *New Hope Family Services v. Poole*, 966 F.3d 145 (2d Cir. 2020), regarding the potential effect of "compelled hiring" on an organization's "ability to advocate public or private viewpoints," it did so only for purposes of addressing whether the burden alleged by the *Slattery* plaintiff was incidental, not whether the right of expressive association extends to the employment context. 61 F.4th at 288 (citing *New Hope Family Services*, 966 F.3d at 179). There was no claim in the case that the regulation at issue compelled any particular hiring. The regulation at issue implicated the relationship between a religiously affiliated adoption services agency and its prospective adoption applicants.

Moreover, while the question whether the right to expressive association extends to the employment context involves a purely legal question that this Court could address in the first instance, defendants sufficiently preserved the issue in their papers below. In seeking dismissal of plaintiffs' expressive-association claim, defendants argued, among other things, that plaintiff's right to expressive association was not implicated because plaintiff was not simply a group of members who came together to convey a message in pursuit of political, social, or

30

religious goals. ECF No. 19-1, at 34. The Court is thus well-positioned now to fully consider the question that was not presented in *Slattery*.

**B.    Plaintiffs Cannot State an Expressive-Association Claim Because the Right of Expressive Association Does Not Extend to the Employment Context.**

The Court should decline to extend the right of expressive association to the employment context. Plaintiffs assert a constitutional "right not to associate" with, and a "right to disassociate" from, employees who make reproductive healthcare decisions that appear to contradict the anti-abortion message plaintiffs seek to promote. Plaintiffs assert further that § 203-e violates that right because it prevents them from rejecting job applicants or taking disciplinary action, including termination, against existing employees who make such decisions.[6] But neither

_____

[6] It is unclear whether the statute covers hiring decisions. Unlike employment discrimination statutes addressing similar subject matter adopted in New York City and elsewhere, *see, e.g.,* N.Y.C. Admin. Code § 8-107(1)(a)(2) (making it illegal "to refuse to hire" any "person" based on sexual and reproductive health decisions); Del. Code tit. 19, § 711(j) (similar); Haw. Rev. Stat. § 378-2(a)(1)(A) (similar), § 203-e makes no express reference to hiring. The Court need not resolve that issue here, however, because plaintiffs also challenge the statute's effect on other employment decisions, including decisions to discipline or termination employees.

the Supreme Court nor any Circuit has expressly upheld a claim of expressive association in the employment context. The Court should decline to do so here.

The Supreme Court has addressed an asserted expressive-association right to be exempt from an anti-discrimination law on five occasions. Four of those cases involved membership associations or other voluntary membership relationships, and, even then, the Court rejected the expressive-association claim three times. *See Roberts v. United States Jaycees*, 468 U.S. 609 (1984) (challenge to public accommodation law as applied to policy of Jaycees of excluding women as full voting members); *New York State Club Assn. v. City of New York*, 487 U.S. 1 (1988) (facial challenge to local law prohibiting discrimination by certain private clubs); *Board of Directors of Rotary Intl. v. Rotary Club of Duarte*, 481 U.S. 537 (1987) (challenge to public accommodation law as applied to policy of Rotary International of excluding women from club member-ship). The Court upheld such a claim only in *Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) (challenging public accommodation law as

32

applied to the Boy Scouts' decision to remove gay activist from membership and voluntary leadership position).[7]

In the one case involving the employment context, the Supreme Court summarily rejected the employer's argument that its right to expressive association shielded it from application of an employment discrimination law. *See Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984). And the Court later described that decision as "reject[ing] the argument that Title VII infringed employers' First Amendment rights." *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993); *see also New York State Club Assn.*, 487 U.S. at 13 (citing *Hishon* for the proposition that the right not to associate does not extend to "every setting in which individuals exercise some discrimination in choosing associates").

Although the Supreme Court did not explain its rationale for rejecting the argument that Title VII infringes the right to expressive-association, the rationale sensibly rests on the fact that, unlike relation-

---

[7]    The Court also considered a First Amendment challenge to enforcement of a public accommodation law in *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995), which involved the "peculiar" application of a public accommodation law to a parade *Id.* at 572. That case involved a free-speech claim, however, and did not in any event involve an employment relationship. *Id.* at 574-80.

ships in a membership association or other voluntary association, the relationship between an employer and its employees is a commercial one.

The commercial relationship of employment does not warrant the same protection as a voluntary expressive association. The concern that prompted the Supreme Court to recognize a right "not to associate" was government intrusion into an association's "internal structure or affairs," which the Court held is a consequence of a regulation that "forces the group to accept members it does not desire." *Roberts*, 468 U.S at 623. The employment relationship does not implicate that concern. As the Supreme Court long ago explained: "In dealing with the relation of employer and employed, the Legislature has necessarily a wide field of discretion in order that there may be suitable protection of health and safety, and that peace and good order may be promoted through regulations designed to insure wholesome conditions of work and freedom from oppression." *West Coast Hotel Co. v Parrish*, 300 U.S. 379, 393 (1937).

Indeed, the commercial relationship between an employer and employee is quite different from the relationship between a voluntary association and its members. The employer hires an employee to perform a specific function and pays the employee a wage in exchange for the

34

employee's efforts. Employment performance can be measured and evaluated to allow the employer to confirm that it is getting the work that it bargained for. And employees are subject to the employer's control, generally over the results produced and the means used to produce the results. *See* 52 N.Y. Jur. 2d Employment Relations § 3(2). Therefore, as the Court in *Slattery* recognized, even under § 203-e, employers like plaintiffs can terminate or take other adverse action against an employee whose performance does not satisfy expectations. *Slattery*, 61 F.4th at 295.

Moreover, both Congress and state legislatures have extensively regulated myriad aspects of the employment relationship. For example, laws regulate the minimum amount an employee must be paid, N.Y. Labor Law § 652, how frequently certain employees may be paid, N.Y. Labor Law § 191, and what safety measures must be put into place to protect employees, 29 C.F.R. pt. 19010 (OSHA regulations). And except for those employment relationships covered by the ministerial exception and an exemption allowing religious organizations to exercise religious preferences, Title VII of the Civil Rights of 1964, 42 U.S.C. §§ 2000e–2000e17; *see id.* § 2000e-1, prohibits discrimination in employment. *See*

*Billard v. Charlotte Catholic High Sch.*, No. 3:17-cv-00011, 2021 U.S. Dist. LEXIS 167418, at *73-74 (W.D.N.C. Sept. 3, 2021) (holding that religious school cannot invoke expressive-association right to defend discriminatory employment decision because relationship is commercial in nature), *appeal filed*, No. 3:17-cv-00011, ECF No. 73 (April 18, 2022), *appeal stayed by* No. 22-1440, 2023 U.S. App. LEXIS 9679 (4th Cir. Apr. 21, 2023).[8]

---

[8] The question whether employment discrimination laws implicate the right of expressive association appears to have been expressly addressed in only a handful of district court decisions. In addition to *Billard*, the District Court for the Southern District of Indiana found it inapplicable in two cases: *Starkey v Roman Catholic Archdiocese of Indianapolis*, 496 F. Supp 3d 1195, 1209 (S.D. Ind. 2020) (relying on *Hishon*), and *Fitzgerald v. Roncalli High Sch.*, No. 1:19-cv-04291, 2021 U.S. Dist. LEXIS 206826, at *7 (S.D. Ind. March 31, 2021) (following *Starkey*); *see also Richardson v. Northwest Christian Univ.*, 242 F. Supp. 3d 1132, 1153 (D. Or. 2017) (summarily rejecting argument on the basis of *Hishon*). In *Bear Creek Bible Church v. EEOC*, 571 F. Supp 3d 571, 616 (N.D. Tex. 2021), the district court for the Northern District of Texas erroneously reached the opposite conclusion in a class-action suit where the right was asserted by a for-profit, religiously identified employer that was engaged in secular work (the production of secular products related to health and wellness), as opposed to any expressive activity. On appeal, the Fifth Circuit reversed the grant of class certification and affirmed in part on other grounds, without reaching the expressive association claim. *See Braidwood Mgmt. v. EEOC*, No. 22-10145, 2023 U.S. App. LEXIS 15378, *36, 37, 45 & n.60 (5th Cir. June 20, 2023).

For these reasons, the Court need not—and should not—extend the right to expressive association to the employment context. Doing so could allow a whole swath of employers to evade the important protections afforded by a broad range of employment discrimination laws. The governing precedents concerning the right of expressive association do not distinguish between religious and non-religious associations, *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 189 (2012), and do not condition the right on judicial approval of the association's message, *see Dale*, 530 U.S. at 661. An individual who sincerely believes in white supremacy could organize an entity to spread that message and invoke the "right not to associate" to refuse to hire Black employees. The same would be true of other entities seeking to spread messages intolerant of other protected characteristics, including religion, ethnicity, national origin, and sex, allowing certain employers to exclude historically disfavored groups from employment opportunities. To be sure, persons with protected characteristics may not wish to work for entities intolerant of their characteristics, but allowing an employer to deny an employment opportunity to a person on account of that

37

person's protected characteristics would fly in the face of well-established principles of equal treatment.

Even if the right to expressive association extended to the employment context, § 203-e's application to plaintiffs would be subject only to rational basis review given its fundamentally commercial nature. Commercial relationships are entitled to "only minimal constitutional protection," and are ordinarily subject to only rational basis review. *Roberts,* 468 U.S. at 635 (O'Connor, J., concurring in part). And this Court has already found that § 203-e satisfies that standard. *See Slattery*, 641 F.4th at 293. Plaintiffs thus fail to state an expressive-association claim.

**C.    Even if Plaintiffs Plausibly Pleaded an Expressive-Association Claim, They Are Not Entitled to a Preliminary Injunction Precluding Enforcement of § 203's Core Provisions.**

Because plaintiffs fail to state an expressive-association claim, their request for a preliminary injunction based on that claim is academic. Even if the Court concludes that plaintiffs plausibly pleaded an expressive-association claim, however, it still should affirm the district court's order denying a preliminary injunction that would preclude enforcement of § 203-e's core provisions.

"'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion.'" *Sussman v. Crawford*, 488 F.3d 136, 139-40 (2007) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)). "To obtain a preliminary injunction against government enforcement of a statute, [the movant] must establish (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm if the injunction is not granted, (3) that the balance of the equities tips in its favor, and (4) that the injunction serves the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 273-74 (2021) (internal citation and quotation omitted). The Court reviews the denial

39

of a preliminary injunction for abuse of discretion, which occurs when the district court "rests its decision on a clearly erroneous finding of fact or makes an error of law." *Id.* at 274.

The district court concluded that plaintiffs failed to establish a likelihood of success on the merits of their expressive-association claim (and, separately, that plaintiffs failed to state a claim) because § 203-e imposed only an incidental burden on that right. (*See* SA32-33.) *Slattery,* however, specifically rejected the notion that the burden on any expressive-association right was incidental.[9] *See Slattery,* 61 F.4th at 290. Thus, if this Court finds that the right to expressive association extends to the employment context, as *Slattery* assumed, then *Slattery's* evaluation of the alleged burden imposed on that right controls. Plaintiffs nonetheless failed to establish a likelihood of success on their expressive-association claim for an independent reason: While they seek to enjoin enforcement of § 203-e against them as to all of their employees (among

---

[9] The district court also found that plaintiffs established irreparable harm in connection with their claimed violation of their right to expressive association, apparently accepting for purposes of argument that they could establish a violation of that right. (SA20-23.) The district court ultimately found, however, that plaintiffs failed adequately to plead a violation of their expressive-association right. (SA32-33.)

40

others), they failed to demonstrate that all or even most of their employees are assigned the task of conveying plaintiffs' message.

In *Dale,* 530 U.S. 640—the only case in which the Supreme Court has upheld a membership organization's expressive-association right to exclude a member in violation of an anti-discrimination law—the Court focused on the effect of the excluded member's role within the organization. The Court explained that, during time spent with youth members in activities like camping, archery, and fishing, scoutmasters and assistant scoutmasters seek to inculcate the Scouts' values, both expressly and by example. *Id.* at 650-51. The excluded member's leadership role in the association, along with his responsibility for communicating the association's values, were thus central to the Court's determination that his continued presence would adversely affect both the Scouts' anti-gay message, as well as its mission to instill values in young people, and thus would impose a burden on its expressive-association right. *Id.; see also Boy Scouts of America v. Wyman*, 335 F.3d 80, 88, 91 (2d Cir. 2003) (describing *Dale* as "recogn[izing] the Boy Scouts' expressive-associational right to exclude a gay activist from a leadership position").

Likewise, in *Slattery*, the Court reasoned that the plaintiff crisis pregnancy center sufficiently alleged a burden on its presumed expressive-association right because it alleged that it employed counselors to provide counseling and education services with an anti-abortion message to pregnant persons during their decisionmaking process. *See Slattery v. Hochul*, 61 F.4th at 278, 288, 290. Indeed, the *Slattery* plaintiff premised its expressive-association claim on its employment decisions regarding those counselors. *See Slattery v. Cuomo*, Dkt. No. 21-911, ECF No. 41 (appellants' opening brief), at 37, 40 (June 15, 2021); *id.* ECF No. 81 (reply brief), at 21, 28 (Sept. 1, 2021).

Here, plaintiffs make a blanket assertion that § 203-e's core provisions will burden their expressive-association right as applied to *all* of their employees. (JA59; Br. 20.) But any burden that the law will impose on plaintiffs' ability to convey its message to members of the public through the employees it hires and retains is necessarily limited to employees who play a role the plaintiffs' expressive activities and does not affect those serving in "nonexpressive positions." *See Chicago Area Council of Boy Scouts of Am. v. City of Chicago Comm'n on Hum. Relations*, 322 Ill. App. 3d 17, 28 (2001) (reasoning that enforcement of

employment discrimination law as to nonexpressive positions within Boy Scouts would not run afoul of *Dale*). Yet plaintiffs submitted only vague descriptions of their employees' job duties, and did not establish that all or even most of their employees performed expressive functions.

The affidavit from CompassCare's president (JA66-75) explains that CompassCare employs individuals to serve as nurses, schedulers, receptionists, and marketing team members (who also provide services relating to financial management and information technology). (JA70.) But the only information CompassCare provided regarding the role individuals in these positions play in conveying its anti-abortion message was a vague reference describing the duties of schedulers as "conveying the value of CompassCare's services to women considering abortion, such that they schedule an appointment." (JA71.) Plaintiffs' preliminary injunction evidence thus does not make clear how and by whom CompassCare's alleged counseling services are provided. (*See* JA71.)

NIFLA's affidavit (JA96-100) falls even farther short. It fails to identify any New York members that seek to require their employees to adhere to an anti-abortion stance in their personal decisionmaking. Instead, the affidavit states only that "[m]any" of NIFLA's New York

members seek to impose that requirement on their employees. (JA98.) And the affidavit also does not describe any of the duties that its members' employees perform.

First Bible's affidavit (JA101-107) describes the functions of its employees generally but does not delineate those whose jobs entail conveying its anti-abortion message. More specifically, while the church employs fourteen pastors and directors, and twenty-four other full-time and part-time employees, the affidavit does not describe the role of directors or identify what directors or other employees do. (JA103.) And while the affidavit states that the church conducts "educational programs," it does not identify the nature of these programs, who serves as instructors, or whether the instructors are employees or volunteers. (JA103.) First Bible also employs administrators and teachers at Northstar Christian Academy, which operates as a "traditional curriculum school" through grade 12 that "teach[es] traditional course offerings from a biblical worldview" as well as a preschool/day care center. (JA104.) But the affidavit does not identify which teachers are responsible for conveying CompassCare's anti-abortion message in their classrooms. First Bible also operates Grace and Truth Athletics and Sports Park, at

44

which it employs a director and ten part-time employees; this program offers recreational sports programs to adults and children that teach "positive Christian values." (JA104.) The affidavit thus fails to identify how the duties of any of these employees involve conveying its anti-abortion message to participants.

Moreover, there is no reason to believe that the reproductive health decisions of all of plaintiffs' employees, including even those without public-facing roles, such as those who provide information technology, accounting, bookkeeping, cleaning, and maintenance services, would impair plaintiffs' ability to convey an anti-abortion message. Indeed, plaintiffs virtually acknowledge as much. In their brief to this Court, they cite as examples of § 203-e's alleged impairment of their message the employment of teachers (by First Bible) and counselors (by CompassCare and NIFLA members) who are directly responsible for counseling women considering abortion, but never suggest that the employment of information technology personnel or other supportive functions could similarly impair their message. (Br. 18-19; *see also* Br. 20 (arguing that the messenger matters in reference to "strategists" and "marketers").)

Because plaintiffs failed to establish that all of their employees are assigned the duty of conveying their anti-abortion message, they failed to establish a likelihood of success on their expressive association claim and thus entitlement to the broad preliminary injunction they sought below (JA59; *see also* JA66, 68-69, 98-99, 103, 105-06) and that they continue to seek on appeal (Br. 20), namely an injunction precluding enforcement of § 203-e's core provisions as to all of their employees. "By necessity, the scope of the injunction must be drawn by reference to the facts of the individual case." *Sunward Electronics v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004). The Court should therefore affirm district court's order denying that relief.[10]

---

[10] As the discussion above suggests, the question of what employees or job categories are involved in conveying the organization's message is ill-suited to resolution in an affirmative, pre-enforcement challenge to the statute's core provisions. As the Supreme Court has recognized in the context of the ministerial exception, "[w]hat matters, at bottom, is what an employee does." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020). Thus, if the Court were to find that the expressive-association right extends to the employment context, an analysis of whether that right is violated by section 203-e is best done in response to an affirmative defense to a specific enforcement action commenced by a particular employee, which would allow for an appropriate, concrete, and individualized determination of the facts. *See Hosanna-Tabor Evangelical Lutheran Church & Sch.*, 565 U.S. 195 n.4

(*continued on the next page*)

# POINT III

## AS TO DEFENDANTS' CROSS-APPEAL, LABOR LAW § 203-E'S NOTICE PROVISION DOES NOT VIOLATE PLAINTIFFS' RIGHT TO FREE SPEECH OR FREE EXERCISE OF RELIGION

Defendants cross-appealed to challenge the district court's rulings granting summary judgment to plaintiffs on their challenge to § 203-e's notice provision, denying defendants summary judgment on that challenge, and entering a permanent injunction enjoining the notice provision as to all employers. The Court should reverse those rulings because the notice provision does not implicate plaintiffs' right to free speech or free exercise.

## A. The Notice Provision Does Not Violate Plaintiffs' Right to Free Speech.

Section 203-e's notice provision requires only that employee handbooks, when used by an employer, include an accurate statement of the employee rights and remedies that § 203-e affords. The requirement is much like numerous laws and regulations requiring employers to post notices in the workplace or provide other means of advising employees of

---

(2012); *accord Penn v. New York Methodist Hosp.*, 884 F.3d 416, 423 (2d Cir. 2018).

47

their rights; it merely requires the inclusion of factual information about the law's protections. It does not require employers to take a position on the protections afforded, and it does not prevent employers from expressing disagreement with the law. (JA326, 377-378.) The Court should, accordingly, reverse the district court's grant of summary judgment to plaintiffs on their free-speech challenge to the notice provision, instead direct entry of summary judgment for defendants dismissing that challenge, and lift the permanent injunction that the district court issued in connection with that challenge.

Numerous federal and state laws and regulations require employers to provide notice to their employees about workplace rights and safety requirements, including in some instances in employee handbooks when used. *See*, *e.g.*, 29 C.F.R. § 1903.2 (posting required to inform employees of rights under the Occupational Safety and Health Act); 29 C.F.R. § 825.300(a)(1) (same as to rights under the Family and Medical Leave Act (FMLA)); 9 N.Y.C.R.R. § 466.1 (same as to rights under the New York Human Rights Law); N.Y. Labor Law § 876 (same as to toxic substances in the workplace); *id.* § 195 (notice as to wage requirements required at time of hiring); 29 C.F.R. § 825.300(a)(3)

(additional notice by certain employers as to rights under FMLA in handbook or similar guidance if provided and otherwise by individual notice upon hiring); *see also* N.Y. Dep't of Lab., *Posting Requirements* (n.d.), https://dol.ny.gov/posting-requirements-0 (nonexhaustive listing of posting requirements under Labor Law and related provisions). (*See also* JA322-324 (providing additional examples).) Such notice requirements are an unremarkable aspect of the government's extensive regulation of the employment relationship and workplace conditions.

Requiring employers to provide notice to employees about employment and workplace protections is a well-accepted practice that does not raise First Amendment concerns. "[A]n employer's right to silence is sharply constrained in the labor context, and leaves it subject to a variety of burdens to post notices of rights and risks." *UAW-Labor Empl. & Training Corp. v. Chao*, 325 F.3d 360, 365 (D.C. Cir. 2003). While such notice requirements are thus rarely challenged as violative of free speech, courts have generally rejected the few challenges mounted. *See, e.g., Lake Butler Apparel Co. v. Sec'y of Labor*, 519 F.2d 84, 89 (5th Cir. 1975) (rejecting as "nonsensical" free speech challenge to OSHA posting requirement); *Nat'l Ass'n of Mfrs. v. Perez*, 103 F. Supp. 3d 7, 16

49

(D.D.C. 2013) (upholding notice requirement requiring federal contractors to inform employees of their rights under the National Labor Relations Act); *cf. Nat'l Ass'n of Mfrs. v. NLRB*, 717 F.3d 947, 959 (D.C. Cir. 2015) (discussing First Amendment concerns of posting requirement of employees' union rights but finding a statutory violation because National Labor Relations Board treated failure to post notice as evidence of anti-union animus and an unfair labor practice).

Indeed, laws requiring employers to provide employees with accurate notice of employment and workplace protections are analogous to laws compelling the disclosure of commercial speech that is "'purely factual and uncontroversial,'" and such laws are subject to rational basis review. *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 113 (2d Cir. 2001) (quoting *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 (1985)); *see also New York State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009) (reiterating this principle). As in that commercial-speech context, a law requiring employers to notify employees of their legal rights "presents little risk that the state is forcing speakers to adopt disagreeable state-sanctioned positions, suppressing dissent, confounding the speaker's attempts to participate in self-governance, or

50

interfering with an individual's right to define and express his or her own personality." *Sorrell*, 272 F.3d at 114.

Because employee handbooks typically include information about employee rights, § 203-e's notice provision rationally serves the legitimate state interest of ensuring that such handbooks do not mislead employees by omission about the existence of the protections afforded them by § 203-e. (*See* JA321, 326.) The inquiry should end there. In subjecting § 203-e's notice provision to heightened scrutiny, the district court ignored the nature of the notice provision and the ubiquity of notice requirements generally. *See supra* at 50-51.

Even if it were necessary to examine the issue further, plaintiffs' free-speech challenge to the provision would fail. In *303 Creative LLC*, No. 21-476, 2023 U.S. LEXIS 2794, the Supreme Court reaffirmed that its compelled-speech cases stand for the proposition that the government may not compel speech that alters or interferes with the speaker's message. *Id.* at *36, 40. For the reasons discussed above and as demonstrated further below, § 203-e's notice provision does not alter or interfere with plaintiffs' anti-abortion message and therefore does not implicate plaintiffs' free speech rights.

51

In arguing to the contrary, plaintiffs insist that the notice provision compels them to tell their employees that "they can procure abortions, use abortifacient drugs, and disregard biblical sexual ethics without consequence," while plaintiffs wish to tell them the opposite message. (Br. 26.) Plaintiffs' argument overlooks two critical aspects of the notice provision.

First, the notice provision requires plaintiffs to inform employees only that they can make personal reproductive health decisions without a particular *legal* consequence—specifically, that their employers cannot take adverse employment actions against them on the basis of such decisions. Section 203-e's notice provision does not address plaintiffs' view that there may be religious or moral consequences for such decisions, and plaintiffs remain free to advise their employees about any such other consequences.

Second, the notice provision addresses all reproductive health decisions, and thus like the statute's core provisions, it is content and viewpoint neutral. The notice provision says nothing about abortion, takes no position on abortion, and does not require employers to address that subject. To the contrary, it evenhandedly protects both employees

who attempt to become pregnant and employees who seek to prevent or terminate a pregnancy. Thus, requiring plaintiffs to provide notice to their employees about those rights if they use a handbook does not compel plaintiffs to promote any view at all.

To the extent the district court found (SA87), as plaintiffs argue here (Br. 27-28), that plaintiffs can state a free-speech claim based on their disagreement with the State's underlying policy judgment to provide the rights protected by § 203-e, the court was mistaken. Indeed, accepting such an argument could have extraordinary consequences. On that view, an employer could evade any of the myriad requirements to provide notice of employment rights and protections merely by asserting a disagreement with the legislative judgment to provide those rights and protections. For example, an employer who disagrees with the legislative judgment to provide a minimum wage could refuse to post information about the minimum-wage law. And an employer who disagrees with the legislature judgment to establish workplace safety requirements under OSHA could refuse to post notices of those requirements as well. The law does not countenance such a "seemingly nonsensical" result. *Lake Butler Apparel Co.*, 519 F.2d at 89. To the contrary, and as the Fifth Circuit

explained in *Lake Butler Apparel,* "[t]he posting of the notice does not by any stretch of the imagination reflect one way or the other on the views of the employer. It merely states what the law requires." *Id.*

And because § 203-e requires only a factual statement to employees about their legal rights (and, even then, only when employee handbooks are used), it is not at all comparable to the notice provision at issue in *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018). Indeed, *NIFLA* did not involve notice to employees at all.

The notice requirement at issue in *NIFLA* required certain types of facilities providing pregnancy-related services to provide notice to *clients* about the existence of and how to access public programs for free or low-cost access to comprehensive family planning services including, among other listed services, abortions. *Id.* at 2369. Moreover, the notice requirement was mandatory, dictated precise language to be used, and had to be "posted in the waiting room, printed and distributed to all clients, or provided digitally at check-in." *Id.* And although the notice requirement covered a broader range of facilities providing pregnancy-related services, it appeared to target anti-abortion advocacy-oriented pregnancy centers, *id.* at 2368, and thus it potentially raised viewpoint

discrimination concerns as well, *id.* at 2370 n.2; *see id.* 2378-79 (Kennedy, J., concurring). On those facts, the Supreme Court reasoned that the notice requirement altered the content of the clinics' anti-abortion message to its clients by requiring the clinics to tell their clients how to obtain state-sponsored abortions at the very time that the clinics were trying to dissuade clients from choosing that option. *Id.* at 2371. The Court thus concluded that the notice requirement constituted a content-based regulation of speech, subject to heightened scrutiny. *Id.*

The notice provision at issue here is quite different. It is directed to plaintiffs' employees, in an employee handbook that the plaintiffs' clients need not even see. It also does not dictate the language to be used, let alone require any reference to abortion or where abortion services can be obtained. And it is not targeted toward employers like CompassCare and the NIFLA members who operate advocacy-oriented pregnancy care centers. Rather, it applies to all employers. It thus has neither the purpose nor effect of altering an anti-abortion message. Accordingly, the notice provision is not subject to heightened scrutiny, but rather  should be evaluated as an ordinary obligation of employers to provide notice to their employees of certain workplace rights and safety protections.

Even if heightened scrutiny applied, the notice provision would satisfy that standard. The notice provision is narrowly tailored to further the State's significant interest in ensuring that employees are not misled about their rights under § 203-e by its omission, while balancing an employer's potential objection to posting information about reproductive health decisions in conspicuous way in the workplace. Employee hand-books generally contain comprehensive information about employees' rights and benefits, such as employee health benefits, privacy of protected health information, health and safety practices, anti-discrimination policies and the like. (JA326.) Indeed, both the CompassCare handbook and NIFLA's model handbook include numerous references to laws protecting employees' rights in the workplace or describing employees' rights consistent with state and federal law. (CompassCare: JA200, 201, 202, 208, 214, 216, 217, 218; NIFLA: JA234, 236, 238.) Employees therefore reasonably refer to an employee handbook, when provided, for information about their rights in the workplace. (JA326.) Failing to include the rights protected by 203-e would misleadingly suggest that no such rights exist. (JA326-327.)

56

On the other side of the scale, an employer need not provide notice at all if it does not use an employee handbook, and the notice provision provides information about employees' rights concerning reproductive health decisions in a less conspicuous manner than a requirement to post the notice in the workplace, where it might be viewed by clients being counseled about those decisions. In this way, the provision addresses employers' potential objections to having information concerning employee's reproductive health decisions posted where it may be seen by the public. And because the notice is limited to a recitation of legal rights, and neither restricts nor impairs plaintiffs' speech regarding their anti-abortion message, the balancing achieved by § 203-e's notice provision is more than adequate to protect plaintiff's free-speech right. In reaching the contrary conclusion, the district court failed to appreciate all of these considerations. (*See* SA88-90).

Accordingly, the Court should reverse the district court's entry of summary judgment to plaintiffs on their claim that the notice provision violates their right to free speech, vacate the permanent injunction enjoining enforcement of the notice provision against all employers, and direct entry of summary judgment in defendants' favor on that claim.

Even if the Court sustains plaintiffs' separate challenge to § 203-e's notice provision as a violation of free speech, it still should reverse the district court's broad permanent injunction precluding the enforcement of that provision against all employers statewide. To the extent plaintiffs can succeed on their challenge to § 203-e's notice provision, they can do so only if the Court agrees that the provision would in fact alter their anti-abortion message. The free-speech right of employers not espousing such a message would not be implicated. Thus, in this pre-enforcement as applied challenge to § 203-e, *see Slattery*, 61 F.4th at 286 (implying as much), plaintiffs cannot obtain injunctive relief that in effect invalidates the notice provision on its face. *See Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (remanding order granting broad injunction and directing district to enjoin enforcement "only as to circumstances presented by [plaintiff's] conduct in this case"). Accordingly, should the court deem any form of injunctive relief on this claim appropriate, which it should not, any such injunction should apply only to these plaintiffs on the established facts.

58

**B.    The Notice Provision Is Generally Applicable and Provides No Basis to Reinstate Plaintiffs' Free Exercise Claim.**

While plaintiffs additionally challenged the notice provision as a violation of their free-exercise right, the district court properly rejected that claim, which thus does not provide an alternative basis to affirm the summary judgment entered in plaintiffs' favor. Plaintiffs' free-exercise claim turns on a single argument, repeated here (Br. 32), that the notice provision is not generally applicable because it applies only to employers who use employee handbooks. The argument is meritless. As the district court correctly found (SA41-42), the notice provision is generally applicable because it extends to all employers who use handbooks and provides no exemptions within that category.

The "'general applicability requirement prohibits the government from in a selective manner imposing burdens only on conduct motivated by religious belief.'" *Slattery*, 61 F.4th at 293 (quoting *Cent. Rabbinical Cong. of the United States & Canada v. New York City Dep't of Health & Mental Hygiene*, 763 F.3d 183, 196 (2d Cir. 2014)). The distinction between employers who use handbooks and those who do not does not directly or indirectly distinguish between secular and religious conduct,

59

let alone burden only the latter. Thus, contrary to plaintiffs' argument (Br. 32), any alleged underinclusivity does not indicate an improper purpose to burden religion. *Cf. Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 543-45 (1993).

Even if the notice provision were viewed as a notice requirement with an exemption for employers who do not use handbooks, that would not, as plaintiffs argue (Br. 32), constitute an "individualized exemption" that would defeat the law's general applicability. *See Fulton v. Philadelphia*, 141 S. Ct. 1868 (2021). Exempting such employers would not invite "the government to decide which reasons for not complying with the policy are worthy of solicitude," and thereby raise concerns that an exemption might be granted or denied on the basis of religion. *See id.* at 1877, 1879 (internal quotation marks omitted).

Accordingly, because this Court has already determined that § 203-e does not target religion, *Slattery*, 61 F.3d at 293, and the notice provision rationally serves a valid state interest (*see supra* at 53), plaintiffs' challenge to the notice provision provides no basis to reinstate their free-exercise claim.

60

## CONCLUSION

On plaintiffs' appeal (No. 22-951), the Court should affirm the judgment insofar as it dismissed plaintiffs' free-exercise, free-speech, and expressive-association claims and denied a preliminary injunction with respect to those claims. On defendants' cross-appeal (No. 22-1076), the Court should reverse the judgment insofar as it granted plaintiffs summary judgment as to the notice provision and entered a permanent injunction enjoining enforcement of that provision, and direct entry of an order awarding summary judgment in defendants favor and dismissing the complaint.

Dated:  Albany, New York
        July 6, 2023

                              Respectfully submitted,

                              LETITIA JAMES
                                *Attorney General*
                                *State of New York*
                              Attorney for Appellees-Cross
                              Appellants

                      By: _____
BARBARA D. UNDERWOOD            LAURA ETLINGER
  *Solicitor General*           Assistant Solicitor General
GALEN LEIGH SHERWIN
  *Special Counsel*
    *for Reproductive Justice*  The Capitol
ANDREA OSER                     Albany, New York 12224
  *Deputy Solicitor General*    (518) 776-2028
LAURA ETLINGER
  *Assistant Solicitor General*
    *of Counsel*

62

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Laura Etlinger, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 11,412 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).

_/s/ Laura Etlinger_