# 22-951 (L), 22-1076

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

---

COMPASSCARE, a New York nonprofit corporation, NATIONAL INSTITUTE OF FAMILY AND LIFE ADVOCATES, dba NIFLA, a Virginia corporation, and FIRST BIBLE BAPTIST CHURCH, a New York nonprofit corporation,

*Plaintiffs-Appellants/Cross-Appellees*,

v.

KATHY HOCHUL, in her official capacity as the Governor of the State of New York, ROBERTA REARDON, in her official capacity as the Commissioner of the Labor Department of the State of New York, and LETITIA JAMES, in her official capacity as the Attorney General of the State of New York,

*Defendants-Appellees/Cross-Appellants.*

---

On Appeal from the United States District Court for the Northern District of New York, Case No. 1:19-cv-1409 (TJM/DJS)

---

## RESPONSE AND REPLY BRIEF OF APPELLANTS/CROSS-APPELLEES

---

KEVIN H. THERIOT
JACOB P. WARNER
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
jwarner@ADFlegal.org

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Ste. 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

JAMES P. TRAINOR
TRAINOR LAW, PLLC
2452 US Route 9, Suite 203
Malta, NY 12020
(518) 899-9200
james@trainor-lawfirm.com

*Counsel for Appellants/Cross-Appellees*

# TABLE OF CONTENTS

Table of Authorities.................................................................... iii

Issues Presented........................................................................1

Introduction..............................................................................3

Argument Summary...................................................................5

Argument..................................................................................9

I.    Plaintiffs plausibly allege and will likely succeed in showing the Act compels expressive association as applied..........................9

    A.    This Court has held that the First Amendment protects employers who join with employees to speak......................10

        1.    This point has been briefed, argued, and decided.......10

        2.    New York seeks to relitigate this Court's precedent even though the State failed to properly preserve it below............................................13

    B.    This Court should reaffirm that the First Amendment protects employers who join with employees to speak........14

        1.    The Supreme Court applies typical expressive-association analysis to employer claims.....................14

        2.    There is no employment exception to expressive-association protection...................................................15

        3.    New York's theory would mean no employer is free to control their group's message...........................20

    C.    Plaintiffs plausibly allege the Act compels expressive association as applied. ........................................................21

i

D.    Plaintiffs will likely succeed in showing the Act compels expressive association as applied. .........................23

    1.    The Act significantly impairs Plaintiffs' ability to promote their pro-life views. ........................................24

    2.    The Act fails strict scrutiny as applied. .......................27

II.    Plaintiffs have shown the Act violates free speech. .....................30

A.    The Act compels Plaintiffs to speak. ......................................30

B.    The Act compels Plaintiffs to speak based on content and viewpoint. ......................................................................33

C.    The Act fails strict scrutiny as applied. ................................34

III.    Plaintiffs plausibly allege and will likely succeed in showing the Act violates free religious exercise. .........................................36

IV.    The remaining injunction factors favor Plaintiffs. .......................37

V.    This Court should order the requested injunction. .......................38

Conclusion ........................................................................................38

Certificate of Service ........................................................................40

Certificate of Compliance ..................................................................41

# TABLE OF AUTHORITIES

## <u>Cases</u>

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023) ........................................................... passim

*Ampersand Publishing, LLC v. N.L.R.B.*,
    702 F.3d 51 (D.C. Cir. 2012) ........................................................ 18

*Baraket v. Holder*,
    632 F.3d 56 (2d Cir. 2011) ...................................................... 12, 14

*Bear Creek Bible Church v. EEOC*,
    571 F. Supp. 3d 571 (N.D. Tex. 2021) .......................................... 18

*Boy Scouts of America v. Dale*,
    530 U.S. 640 (2000) .............................................................. passim

*Boy Scouts of America v. Wyman*,
    335 F.3d 80 (2d Cir. 2003) ...................................................... 10, 18

*Braidwood Management v. EEOC*,
    70 F.4th 914 (5th Cir. 2023) ........................................................ 18

*Central Rabbinical Congress of United States & Canada v. New*
    *York City Department of Health & Mental Hygiene*,
    763 F.3d 183 (2d Cir. 2014) ........................................................ 35

*Chicago Area Council of Boy Scouts v. City of Chicago Commission*
    *on Human Relations*,
    748 N.E.2d 759 (Ill. App. Ct. 2001) .............................................. 18

*Church of the Lukumi Babalu Aye v. City of Hialeah*,
    508 U.S. 520 (1993) ............................................................... 36, 37

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ................................................................... 17

*Claybrooks v. American Broadcasting Companies, Inc.*,
    898 F. Supp. 2d 986 (M.D. Tenn. 2012) ........................................ 17

*Dayton Board of Education v. Brinkman*,
    433 U.S. 406 (1977) ...................................................................... 27

*Doscher v. Sea Port Group Securities, LLC*,
    832 F.3d 372 (2d Cir. 2016) ......................................................... 12

*Employment Division, Department of Human Resources of Oregon
    v. Smith*,
    494 U.S. 872 (1990) ...................................................................... 36

*English v. Town of Huntington*,
    448 F.2d 319 (2d Cir. 1971) ......................................................... 38

*Entertainment Software Association v. Blagojevich*,
    469 F.3d 641 (7th Cir. 2006) ........................................................ 33

*Expressions Hair Design v. Schneiderman*,
    581 U.S. 37 (2017) ........................................................................ 33

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) ........................................................... 28, 37

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ...................................................................... 28

*Green v. Miss United States of America, LLC*,
    52 F.4th 773 (9th Cir. 2022) ......................................................... 16

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ..................................................... 15, 20, 21, 29

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
    565 U.S. 171 (2012) ...................................................................... 19

*Hurley v. Irish-American Gay, Lesbian, & Bisexual Group of
    Boston*,
    515 U.S. 557 (1995) ................................................... 17, 21, 28, 31

*IDK, Inc. v. Clark County*,
    836 F.2d 1185 (9th Cir. 1988) ........................................... 17, 18, 29

*International Dairy Foods Association v. Amestoy,*
    92 F.3d 67 (2d Cir. 1996) ................................................................. 38

*Little v. Wuerl,*
    929 F.2d 944 (3d Cir. 1991) ........................................................... 20

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) ................................................................... 36

*Matal v. Tam,*
    582 U.S. 218 (2017) ....................................................................... 32

*McDermott v. Ampersand Publishing, LLC,*
    593 F.3d 950 (9th Cir. 2010) ................................................. 18, 29

*Miami Herald Publishing Company v. Tornillo,*
    418 U.S. 241 (1974) ....................................................................... 31

*National Electrical Manufacturers Association v. Sorrell,*
    272 F.3d 104 (2d Cir. 2001) ........................................................... 32

*New Hope Family Services, Inc. v. Poole,*
    966 F.3d 145 (2d Cir. 2020) ................................................. passim

*New York Progress & Protection PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013) ........................................................... 38

*New York State Club Association, Inc. v. City of New York,*
    487 U.S. 1 (1988) ........................................................................... 20

*New York State Restaurant Association v. New York City Board of
    Health,*
    556 F.3d 114 (2d Cir. 2009) ........................................................... 32

*Our Lady's Inn v. City of St. Louis,*
    349 F. Supp. 3d 805 (E.D. Mo. 2018) ........................................... 18

*Pacific Gas & Electric Co. v. Public Utilities Commission of
    California,*
    475 U.S. 1 (1986) ........................................................................... 17

*Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*,
   229 F.3d 435 (3d Cir. 2000) ........................................................ 23

*Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*,
   413 U.S. 379 (1973) .................................................................... 33

*Priests for Life v. HHS*,
   7 F. Supp. 3d 88 (D.D.C. 2013) ................................................. 18

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) .................................................................... 32

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
   487 U.S. 781 (1988) ............................................................... 32, 34

*Roberts v. United States Jaycees*,
   468 U.S. 609 (1984) ........................................................... passim

*Rosenberger v. Rector & Visitors of University of Virginia*,
   515 U.S. 819 (1995) .................................................................... 34

*Rumsfeld v. FAIR*,
   547 U.S. 47 (2006) ....................................................... 11, 16, 33

*Schlosser v. Kwak*,
   16 F.4th 1078 (2d Cir. 2021) ...................................................... 14

*Seminole Tribe of Florida v. Florida*,
   517 U.S. 44 (1996) ...................................................................... 11

*Slattery v. Cuomo*,
   531 F. Supp. 3d 547 (N.D.N.Y. 2021) ......................................... 13

*Slattery v. Hochul*,
   61 F.4th 278 (2d Cir. 2023) ................................................. passim

*Sohm v. Scholastic Inc.*,
   959 F.3d 39 (2d Cir. 2020) .......................................................... 11

*Sunward Electronics, Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004) .......................................................... 27

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ........................................................... 35, 37

*Texas v. Johnson,*
    491 U.S. 397 (1989) .................................................................... 28

*Tunick v. Safir,*
    209 F.3d 67 (2d Cir. 2000)......................................................... 38

*Virginia State Board of Pharmacy v. Virginia Citizens Consumer*
    *Council, Inc.,*
    425 U.S. 748 (1976) .................................................................... 16

*Wandering Dago, Inc. v. Destito,*
    879 F.3d 20 (2d Cir. 2018)......................................................... 32

*Wooley v. Maynard,*
    430 U.S. 705 (1977) .................................................................... 31

*Zauderer v. Office of Disciplinary Counsel,*
    471 U.S. 626 (1985) .................................................................... 31

## **Statutes**

42 U.S.C. § 2000e-1 ..........................................................................20

42 U.S.C. § 2000e-2 ..........................................................................20

N.Y. Lab. Law § 203-e(6)............................................................ 31, 37

## **Other Authorities**

Brian Soucek, *The Constitutional Irrelevance of Art*, 99 N.C. L.
    Rev. 685 (2021) ...........................................................................17

Eugene Volokh, *The Law of Compelled Speech*, 97 Tex. L. Rev. 355
    (2018) ...........................................................................................33

Maya Phillips, *'Hamilton,' 'The Simpsons,' and the Problem with*
    *Colorblind Casting*, N.Y. TIMES (July 10, 2020)............................22

**<u>Regulations</u>**

29 C.F.R. § 1604.2 ...................................................................................20

# ISSUES PRESENTED

Plaintiffs-Appellants are nonprofits that exist to promote a common message: all human life is sacred. They promote biblical beliefs about life, sexuality, and marriage. And they hire only those who share and can credibly promote their beliefs. N.Y. Labor Law § 203-e forbids employers from making employment decisions based on a person's "reproductive" choices. It also forbids employers from requiring employees to sign "waivers or other documents" disclaiming this right. And it forces employers with employee handbooks to publish details on the Act. These rules apply to all employers. Violations trigger hefty penalties—costly lawsuits, damages, attorneys' fees and more. This presents five questions.

1.    N.Y. Labor Law § 203-e forces Plaintiffs to employ those who reject their beliefs and cannot credibly promote their message. Did Plaintiffs plausibly allege, and will they likely succeed in showing this violates their rights under the First Amendment to the U.S. Constitution?

2.    N.Y. Labor Law § 203-e forces Plaintiffs to notify employees in their employee handbook that reproductive choices will have no adverse employment consequences. Did Plaintiffs plausibly allege, and will they likely succeed in showing this violates their right to freely exercise their faith under the First Amendment to the U.S. Constitution?

3.    N.Y. Labor Law § 203-e forces Plaintiffs to notify employees in their employee handbook that reproductive choices will have no adverse employment consequences. Did the district court correctly enter summary judgment for Plaintiffs, holding this coerced speech violates Plaintiffs' right to free speech under the First Amendment to the U.S. Constitution and enjoining the unconstitutional application?

4.    N.Y. Labor Law § 203-e forbids Plaintiffs from requiring employees to waive their right to sue under the law. Did Plaintiffs plausibly allege, and will they likely succeed in showing this violates their rights under the First Amendment to the U.S. Constitution?

5.    The injunction record below is complete. Should this Court preliminarily enjoin N.Y. Labor Law § 203-e as applied?

# INTRODUCTION

A few months ago, this Court decided a nearly identical case—*Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023)—which held that N.Y. Labor Law § 203-e ("the Act") could not force a religious nonprofit to hire those who would impair its pro-life message. New York seeks to eviscerate that ruling here by arguing this Court assumed something it shouldn't—that the First Amendment can protect employers who join with employees to speak. But this Court assumed nothing. That holding was express, necessary to the Court's ruling, and consistent with decades of precedent. New York tries to collaterally attack *Slattery* here, seeking an employment exception to expressive-association protection.

This Court should reject that push. It has already decided the issue correctly. Groups don't shed First Amendment protection when they hire people to speak. Otherwise, government could force *Hamilton* producers to cast white founders, MSNBC to hire Tucker Carlson, and Democrats to hire Republican publicists—no matter how these hires would affect the group's message. That's not the law. And because the First Amendment protects those employers, it also protects Plaintiffs-Appellants—religious nonprofits who hire only those who will not impair their pro-life message. The Act cannot cripple Plaintiffs' mission by forcing them to hire messengers who cannot credibly promote it.

Worse, the Act forces Plaintiffs to advertise the State's message by compelling them to publish in their employee handbooks the very message they oppose—that employees can have abortions, use abortifacient drugs, or reject biblical sexual ethics without legal consequence. While New York says the Act only compels Plaintiffs to promote purely factual information, it forces them to lie. Because the Act cannot coerce Plaintiffs' expressive association, the coerced disclosure isn't even true.

This coercion violates both free speech and free exercise. New York has no legitimate interest in coercing Plaintiffs' expression. Nor is this coercion needed. While New York would coerce Plaintiffs, it does not coerce employers with no handbook. That broad exemption shows New York need not crush Plaintiffs.

The Act also unjustly coerces Plaintiffs as applied, inviting crushing lawsuits that threaten damages, injunctions, attorney fees, and more. Plaintiffs plausibly allege that the Act violates expressive association and free exercise. And they've shown it violates their free speech. They deserve an injunction. This Court should affirm summary judgment below, reverse the dismissal, and enjoin the Act as applied. Plaintiffs have waited long enough to enjoy their freedom without fear of state reprisal.

## ARGUMENT SUMMARY

The Act violates Plaintiffs' constitutional rights. The First Amendment protects the right to associate to engage in expressive activities. This freedom ensures that Americans can associate to promote diverse views. It protects people from all backgrounds. And it presupposes the freedom not to associate. The Act violates this principle—forcing Plaintiffs to employ those who cannot credibly promote their message. *Slattery* controls this claim. It held that the Act cannot force groups to hire those who would severely impair their pro-life message. 61 F.4th at 291.

New York says this Court in *Slattery* skipped a step, wrongly *assuming* that the First Amendment protects employers who join with others to speak. But this Court has repeatedly held that employers have expressive-association freedom, including in *Slattery*. This Court should not reverse its precedents, which faithfully apply U.S. Supreme Court rulings. Indeed, while New York says the Supreme Court has denied that employers may join with employees to speak, that Court has instead applied typical expressive-association analysis to employer claims. There is no employer exception to expressive freedom.

New York barely contests that Plaintiffs state a plausible expressive-association claim if this Court does not reverse itself, suggesting rational-basis applies because the Act can only incidentally burden employers. But *Slattery* rejects this, holding the Act may severely burden em-

ployers' expression by coercing groups to hire those who impair their message. 61 F.4th at 288. More creatively, *amici* would divide Plaintiffs' claims. They say the Act severely burdens CompassCare and NIFLA because those groups exist to promote life, but the Act incidentally burdens First Bible because it exists to promote more than life. But groups need not exist solely to promote the affected message to warrant protection. They need only engage in expression that could be impaired. Plaintiffs plausibly allege that the Act violates their expressive freedom.

What's more, Plaintiffs will likely succeed in showing the Act violates this freedom. The record shows that the Act severely impairs Plaintiffs' message. And the Act fails strict scrutiny as applied. *Amici* assert that eliminating employment discrimination is a compelling interest. But that defines New York's interest too broadly. The State must instead show a compelling interest in coercing *these* Plaintiffs' expression. It has not done so. The First Amendment protects against such coercion no matter whether the government considers the speech hurtful. And while *amici* predict this freedom will allow rampant status-based discrimination, their fears are unwarranted. That's particularly true for these religious Plaintiffs that can make employment decisions based on religious belief. The Act can ensure equal employment opportunity, while protecting against coerced expression.

Plaintiffs have shown that the Act violates free speech. The First Amendment protects against government-compelled speech. The Act

6

forces Plaintiffs to publish in their handbooks that employees can make reproductive health decisions without facing adverse employment actions. New York defends this coercion, saying government can require employers to disseminate purely factual commercial information. But the Act compels a lie. Because the Act cannot force Plaintiffs to employ those who significantly impair their message, telling employees they can violate Plaintiffs' rules without adverse consequences is false. The Act compels fully protected speech. And it does so based on content and viewpoint. That triggers strict scrutiny, which the Act fails as applied. Plaintiffs won summary judgment below. This Court should affirm it.

The Act also violates free exercise. The Act is not neutral or generally applicable because its notice rule does not apply to all employers— only to those with an employee handbook. Yet New York says this rule triggers rational-basis review because it applies to all employers who use handbooks, not just to religious ones. Br. for Appellees-Cross-Appellants (State's Br.) 59. But it's no answer that the rule treats some secular groups as poorly as Plaintiffs. The analysis turns on impacts to interest. Because this broad exemption threatens New York's interest at least as much as Plaintiffs' religious exercise, strict scrutiny applies, and the Act cannot punish Plaintiffs for obeying their faith. Plaintiffs plausibly alleged and will likely succeed in showing that the Act violates their right to freely exercise their faith.

Plaintiffs plausibly allege expressive-association and free-exercise claims. And they've shown the Act violates free speech. Every day Plaintiffs face First Amendment injury, they also risk costly lawsuits, damages, attorney fees, and more. The public loses too. New York has no interest in enforcing unconstitutional laws. And because no further record development is needed, this Court should reverse the dismissal below and preliminarily enjoin the Act as applied. The Court should also affirm the summary judgment. Plaintiffs have waited long enough to fearlessly enjoy their freedom. This Court should end their wait here.

## ARGUMENT

## I. Plaintiffs plausibly allege and will likely succeed in showing the Act compels expressive association as applied.

The First Amendment protects the "right to associate" to engage in expressive activities. *Slattery*, 61 F.4th at 286 (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). Plaintiffs engage in expressive association by joining with their employees "to advocate" religious and pro-life "viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000); Br. of Appellants/Cross-Appellees (Opening Br.) 18. The Act significantly impairs this advocacy by forcing Plaintiffs to employ those who cannot credibly convey their message. Opening Br. 18-21. Because the Act fails strict scrutiny as applied, Plaintiffs plausibly allege that the Act violates their right to expressively associate with their employees. *Id.* at 21-25.

*Slattery* controls. Yet New York says this Court wrongly assumed a legal point necessary to *Slattery*'s holding—that the First Amendment may protect employers who join "with its employees" to speak. State's Br. 27; *see id.* at 27-38. Per New York, *no one* has a "right to expressive association" in "the employment context," *Id.* at 27, and if they do, infringing the right triggers only "rational basis review." *Id.* at 38. And even if *Slattery* controls, New York says Plaintiffs deserve no preliminary injunction because they have not shown that employing those who cannot credibly promote their message affects their message. *Id.* at 39-46. New York is mistaken in every respect.

**A.    This Court has held that the First Amendment protects employers who join with employees to speak.**

This Court has repeatedly held that the First Amendment protects employers who join with employees to speak. *Slattery*, 61 F.4th at 283; *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145, 179 (2d Cir. 2020); *see Boy Scouts of Am. v. Wyman*, 335 F.3d 80, 88-89, 91 (2d Cir. 2003) (Scouts may exclude "gay activists" from "employment" involving leadership.). Among other things, it protects against "[c]ompelled hiring" that significantly impairs a "group's ability to advocate" its "viewpoints." *Slattery*, 61 F.4th at 288; *New Hope*, 966 F.3d at 179. But New York says this issue remains undecided because the Court has only silently assumed a point that has never been "briefed, argued, or decided." State's Br. 27. Not so.

**1.    This point has been briefed, argued, and decided.**

This Court has decided that the First Amendment protects employers who join with employees to speak. *Slattery*, 61 F.4th at 288; *New Hope*, 966 F.3d at 179; *see Wyman*, 335 F.3d at 89, 91. Critically, it's held that a pro-life nonprofit plausibly alleged the Act violated its right not to expressively associate with employees who would impair its pro-life message. *Slattery*, 61 F.4th at 283. The Court has also held that a religious adoption center plausibly alleged state law violated its right to expressively associate by requiring it to "correct or discipline" employees who express its religious message. *New Hope*, 966 F.3d at 179 (cleaned up). And this should surprise no one. The right to "expressive association" has

10

long protected "more than just a group's membership decisions." *Id.* (citing *Rumsfeld v. FAIR*, 547 U.S. 47, 69 (2006)). It equally protects their employment choices significantly affecting the group's message.

These holdings are express, binding precedent, not silent assumptions. *Contra* State's Br. 27. This Court treats both the "result" and all "portions" of its prior decision "necessary to that result" as binding precedent. *Sohm v. Scholastic Inc.*, 959 F.3d 39, 52 (2d Cir. 2020); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). In *Slattery*, a pro-life nonprofit asked whether it had plausibly alleged the Act "unconstitutionally burden[ed]" its "right to expressive association" by "limiting the conditions [it] may place on those they employ." Opening Br. of Appellants at 2, *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) (No. 21-911), 2021 WL 2456513. This Court held that it did. *Slattery*, 61 F.4th at 283. The Court could not conclude that without deciding the First Amendment may protect an employer's right to expressively associate. Because this Court has both expressly and necessarily resolved this issue, its resolution is "binding precedent." *Baraket v. Holder*, 632 F.3d 56, 59 (2d Cir. 2011) (per curiam) (cleaned up). It should not reverse multiple prior panel decisions. *Doscher v. Sea Port Grp. Sec., LLC*, 832 F.3d 372, 378 (2d Cir. 2016).

These prior holdings did not appear in a vacuum. Contrary to New York's suggestion, litigants have "briefed" and "argued" whether the First Amendment protects employers' right to expressively associate with

their employees. State's Br. 27. Take *New Hope*, where the adoption center urged that state law violated its right to expressive association by requiring it to "correct or discipline employees" who "express" its "beliefs" to others. 966 F.3d at 179 (cleaned up). New York answered that "not every group can assert an expressive-association right," and that because "New Hope [was] not open to membership," it was "not a group that engages in 'expressive association' within the meaning of the First Amendment." Br. for Appellee at 55, 58-59*, New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020) (No. 19-1715), 2019 WL 5448405. New Hope replied that, contrary to New York's view, "no case limits expressive association rights to formal membership organizations." Reply Br. of Appellant New Hope Fam. Servs., Inc. at 25, *New Hope Fam. Servs., Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020) (No. 19-1715), 2019 WL 5784783. This Court settled that dispute, holding that New Hope plausibly alleged state law violated its right to expressively associate with employees by making employment with New Hope "'less attractive' for those who would otherwise" join with it to "convey their shared beliefs." *New Hope*, 966 F.3d at 179.

Even in *Slattery*, where New York says it "assumed" that the pro-life nonprofit associated with its employees "to engage in expressive activity," State's Br. 28, the nonprofit did not. It both defended the district court's ruling that the nonprofit expressively associates with its employees and rebutted New York's contention below that it did not "associate"

with "staff" for "the purpose of conveying a message." Opening Br. of Appellants at 23, *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023) (No. 21-911), 2021 WL 2456513; *see Slattery v. Cuomo*, 531 F. Supp. 3d 547, 567 (N.D.N.Y. 2021) (noting New York argued that "Plaintiffs should not be considered an expressive association" before holding that "Plaintiffs … engage in expressive association"). This Court, in turn, held that the non-profit "plausibly alleged" the Act violated its "right to freedom of expressive association" by forcing it to hire "employees whose actions suggest that they believe the opposite of the message it is trying to convey." *Slattery*, 61 F.4th at 288. So in both *Slattery* and *New Hope*, the employment issue was briefed, argued, *and* decided.

> **2.    New York seeks to relitigate this Court's precedent even though the State failed to properly preserve it below.**

New York says it preserved the expressive association issue by arguing that Plaintiffs' "right to expressive association was not implicated because [Plaintiffs were] not simply [groups] of members who came together to convey a message in pursuit of political, social, or religious goals." State's Br. 30-31 (citing Mem. of Law in Opp'n to Pls.' Mot. for a Prelim. Inj. and in Supp. of Defs.' Mot. to Dismiss at 24, *CompassCare v. Cuomo*, 465 F. Supp. 3d 122, ECF No. 19-1). But New York nowhere mentions employer, employee, or employment on the record page cited. And "vague" references do not suffice "to preserve an argument" for "appeal."

*Schlosser v. Kwak*, 16 F.4th 1078, 1080 n.1 (2d Cir. 2021). Either New York did not preserve this issue below, or the issue has been argued before. And if this issue is "purely legal," as New York says, State's Br. 30, then this Court rightly decided it before—even if no parties had briefed it—because deciding the issue was necessary to resolve the appeal.

Anyway, this Court has repeatedly held that the First Amendment protects employers who join with employees to speak. New York may think "prior opinions on this question ought to have been more detailed," and that its arguments could have been better, but that's no reason for this Court to "reach a contrary decision" now. *Baraket*, 632 F.3d at 59.

## B. This Court should reaffirm that the First Amendment protects employers who join with employees to speak.

Rejecting these precedents, New York says this Court should deny an employer's right to expressively associate with its employees because (1) the U.S. Supreme Court "summarily rejected" this right in *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984), (2) the right to expressively associate does not protect "commercial relationship[s]," and (3) such a right has no limit. State's Br. 33-34; *see id.* at 31-38. Not so.

### 1. The Supreme Court applies typical expressive-association analysis to employer claims.

*Hishon* did not hold that employment decisions are categorically exempt from expressive-association protection; it held that a for-profit law

14

firm hadn't shown that extending partnership to a woman would "inhibit[ ]" expression of its "ideas and beliefs." 467 U.S. at 78; *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2333 (2023) (Sotomayor, J., dissenting) (explaining that in *Hishon*, the application of "Title VII did not 'inhibi[t]' the partnership's ability to advocate for certain 'ideas and beliefs'"). Indeed, this typical expressive-association analysis would have been unnecessary had the Supreme Court held that employment decisions were categorically unprotected. But New York overlooks this analysis—incorrectly believing the "Supreme Court did not explain its rationale"—and guesses the Supreme Court meant that expressive-association protection does not cover the "commercial relationship" between "an employer and its employees." State's Br. 33-34. That guesswork misses the mark.

> **2.    There is no employment exception to expressive-association protection.**

Chasing this hunch, New York distinguishes employment relationships from voluntary-association relationships. It says expressive-association protection aims to stop government intrusion into a group's "internal structure or affairs" by forcing it "to accept members it does not desire." State's Br. 34. That's true, but more specifically, the right prevents government from coercing groups "to accept" those who "may impair" their "ability" to "express [their] views." *Dale*, 530 U.S. at 648. This right should protect employers who join with employees to speak, but New York says employment decisions do not "implicate" the concern because

15

unlike voluntary-association relationships, employers "pay" their employees and the State can generally regulate employment by setting minimum wage, safety standards, and pay cycles. State's Br. 34-35.

Neither distinction is constitutionally relevant. First, the "freedom of expressive association protects more than just a group's membership decisions." *New Hope*, 966 F.3d at 179 (citing *FAIR*, 547 U.S. at 69). And speech "does not lose its First Amendment protection because money is spent to project it." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976); *accord 303 Creative*, 143 S. Ct. at 2316; *Green v. Miss United States of Am., LLC*, 52 F.4th 773, 787 (9th Cir. 2022). The U.S. Supreme Court has repeatedly affirmed that First Amendment protections "extend[ ] to" commercial associations. *Citizens United v. FEC*, 558 U.S. 310, 342 (2010); *Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Cal.*, 475 U.S. 1, 8 (1986) (collecting cases).

Employment status does not define whether "expression is a significant or necessary component of" what the association does. *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1195 (9th Cir. 1988). For example, many theaters and television studios employ their team. But that does not mean the production crews and cast members cannot join to speak. The First Amendment protects "casting decisions" because they "are part and parcel of the [producers'] creative process." *Claybrooks v. Am. Broad. Cos., Inc.*, 898 F. Supp. 2d 986, 993 (M.D. Tenn. 2012). Indeed, producers ex-

press an "overall message" in part through the actors cast in their performances. *Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Bos.*, 515 U.S. 557, 577 (1995). Consider that *Hamilton* would express a vastly different message if theaters were "forced to cast a White George Washington," Brian Soucek, *The Constitutional Irrelevance of Art*, 99 N.C. L. Rev. 685, 719 (2021), as would *The Bachelor* if ABC were forced to hire a married man as its lead. Sometimes, the messenger is the message.

The critical questions are whether employer joins with its employee to speak, and whether government regulation significantly impairs their message. *Slattery*, 61 F.4th at 287. Sure, employers "pay[ ]" their employees to work. State's Br. 34. This is unexceptional. But when that work affects the group's message, expressive-association protection may apply. *See IDK*, 836 F.2d at 1195 (suggesting that newspapers, concert promotors, publishers can be expressive associations). For example, newspapers hire editors who direct "the expressive content of [the] newspaper." *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 962 (9th Cir. 2010). Just because *The New York Times* hires its editors does not mean government can force it to employ those who would impair the newspaper's message. "Telling [a] newspaper that it must hire" certain editors "is bound to affect what gets published," infringing on "the publisher's" right to choose the "content of its newspaper." *Id.*; *accord Ampersand Publ'g, LLC v. N.L.R.B.*, 702 F.3d 51, 56 (D.C. Cir. 2012). Who the newspaper

17

hires affects what the newspaper says. The First Amendment embraces no employment exception to expressive-association protections.

This explains why multiple courts, including this one, have protected employers from being coerced to join with employees to speak. *E.g.*, *Slattery*, 61 F.4th at 288; *New Hope*, 966 F.3d at 179; *Wyman*, 335 F.3d at 89, 91; *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 615-16 (N.D. Tex. 2021), *rev'd on other grounds by Braidwood Mgmt. v. EEOC*, 70 F.4th 914 (5th Cir. 2023); *Our Lady's Inn v. City of St. Louis*, 349 F. Supp. 3d 805, 822 (E.D. Mo. 2018); *Priests for Life v. HHS*, 7 F. Supp. 3d 88, 109 (D.D.C. 2013); *Chi. Area Council of Boy Scouts v. City of Chi. Comm'n on Hum. Rels.*, 748 N.E.2d 759, 769 (Ill. App. Ct. 2001).

Second, while government may regulate employment relationships, State's Br. 34-36, that does not mean it may do so in ways that violate the First Amendment. For example, government may "prohibit discrimination" in places of public accommodation, ensuring people can acquire "whatever products and services they choose on the same terms and conditions as are offered to other members of the public." *303 Creative*, 143 S. Ct. at 2314-15. "And there are no doubt innumerable goods and services that no one could argue implicate the First Amendment." *Id.* at 2315. But "[a]t the same time, … no public accommodations law is immune from the … the Constitution." *Id.* Such laws cannot be "deployed to compel speech." *Id.* (citing *Dale* to exemplify this). So too with employ-

ment laws. Government cannot misuse them to compel expressive association just because the State can generally regulate the subject matter. When employment "law and the Constitution collide," the Constitution "must prevail." *Id.*

Title VII is no exception. State's Br. 35-36. New York admits that the First Amendment bars Title VII from regulating "employment relationships covered by the ministerial exception." *Id.* at 35. Apart from the guesswork above, New York does not show why the ministerial exception protects employers from Title VII claims but other First Amendment rights do not. If anything, this Court should infer the opposite given that "expressive-association cases" help inform what the ministerial exception entails. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 200 (2012) (Alito J., joined by Kagan, J., concurring).

What's more, Title VII expressly exempts certain expressive associations. "Religious groups are the archetype of associations formed for expressive purposes." *Id.* Title VII ensures these groups may "employ only" those who share—and can thus credibly promote—their beliefs. *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991); *see* 42 U.S.C. § 2000e-1. It also includes a "bona fide occupational qualification" exception, 42 U.S.C. § 2000e-2(e), which expressly allows theaters and production studios to select "actor[s]" and "actress[es]" based on sex when it affects the "genuineness" of their message, 29 C.F.R. § 1604.2. These exceptions suggest

19

that Congress never intended for Title VII to coerce expressive association.

### 3. New York's theory would mean no employer is free to control their group's message.

Finally, an employer's expressive-association protection is limited. While New York says this protection "allow[s] a whole swath of employers to evade the important" employment laws, State's Br. 37, and *amici* says it would "clear the path for unchecked [employment] discrimination," Br. of *Amici Curiae* N.Y. Civil Liberties Union & Am. Civil Liberties Union (ACLU Br.) 10, not "every" employment choice "is protected," *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 13 (1988)—only those that "significantly affect[ ] the group's ability to advocate its viewpoints," *Slattery*, 61 F.4th at 287. This crucial check ensures that employers who speech is not affected have no protection, *Hishon*, 467 U.S. at 78, while groups that include anyone not impairing their message will remain free to effectively speak, *Slattery*, 61 F.4th at 287.

This strikes the right constitutional balance. *Amici* fret that if the First Amendment protects employers, Hobby Lobby could refuse "to employ" contraception users, law firms could "refuse to hire women," gyms could reject those "with disabilities," retail shops could "exclude veterans," and more. ACLU Br. 11-12. But these groups may be "unselective," *Roberts*, 468 U.S. at 621, they may lack "sincerity," *Dale*, 530 U.S. at 651; *see Hurley*, 515 U.S. at 572-73 (distinguishing parade organizers' sincere

20

message-based objection from "any intent to exclude homosexuals as such"), they may have no message, or their message may not be impaired, *e.g.*, *Hishon*, 467 U.S. at 78. Courts may test whether a group's decision constitutes bare "[i]nvidious … discrimination," *id.*, and pretext, *see Hurley*, 515 U.S. at 572-73, or "sincerely" protects a message, *Dale*, 530 U.S. at 653. In most cases, businesses will "lack the distinctive characteristics" necessary for "constitutional protection." *Roberts*, 468 U.S. at 621.

In contrast, New York and *amici* push a broad and dangerous rule. On their logic, government could force Democrats to hire Republican publicists, and Win Without War to hire a war criminal—no matter how these individuals impair the employer's message. *Hamilton* could no longer cast diverse Founders to "make the story of America something that can … be owned by people of color." Maya Phillips, *'Hamilton,' 'The Simpsons,' and the Problem with Colorblind Casting*, N.Y. TIMES (July 10, 2020), https://perma.cc/329F-CGFP. Politicians could no longer keep their message credible and on point. And nonprofits would be hypocrites. The First Amendment tolerates none of this. Government may not coerce groups to hire those who will impair their message. That is not the law.

## C. Plaintiffs plausibly allege the Act compels expressive association as applied.

New York barely contests that Plaintiffs plausibly allege the Act compels their expressive association if employers have "the right to expressive association." State's Br. 38. Citing a lone concurrence, New York

21

equates nonprofit employment to commercial activity that triggers "only minimal constitutional protection." *Id.* (citing *Roberts*, 468 U.S. at 635 (O'Connor, J., concurring in part). Then it says the Act's coercion is subject "only to rational basis review." But Plaintiffs allege the Act compels them to join with employees who cannot credibly promote their message. JA29-32, 42-43; Opening Br. 18-21. This Court held that such compulsion "severely" burdens Plaintiffs' right "to expressive association." *Slattery*, 61 F.4th at 288. So "strict scrutiny applies." *Id.* at 289. New York has not shown the Act satisfies that test. Opening Br. 21-25. Plaintiffs plausibly allege the Act compels their expressive association.

*Amici* would divide Plaintiffs' claims. They say the Act severely burdens only CompassCare and NIFLA because those groups exist to "oppos[e] abortion," but First Bible must show "more" to allege the Act severely burdens them because while the church "sincerely oppose[s] abortion" and expresses that view, it does more than "precisely … advocate against" abortion. ACLU Br. 17. But groups need not "associate for the 'purpose' of disseminating a certain message" to trigger protection. *Dale*, 530 U.S. at 655; *accord Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 443 (3d Cir. 2000). They "must merely engage" in expression "that could be impaired." *Dale*, 530 U.S. at 655. For example, *Hurley*'s parade organizers did not join with others "to espouse any views about sexual orientation," yet they could exclude those who would force them to express what they would otherwise not say. *Id.* And in *Dale* the

Scouts' "central tenets" arguably didn't "say[] the slightest thing about homosexuality," 530 U.S. at 665-68 (Stevens, J., dissenting).

As *amici* admit, First Bible aims to promote a pro-life message. ACLU Br. 17. It "seeks to recognize and preserve the sanctity of human life from conception until natural death." JA32. The church advances this "pro-life mission" both "internally and publicly" through "events, ministries, and partnerships." JA33. And like fellow plaintiffs, First Bible hires only those "who agree with, personally adhere to, and effectively convey" its pro-life beliefs. JA21. This is critical to fulfilling its mission. JA21. The same goes for its ministries, Northstar Christian Academy and Grace and Truth Athletics and Sports Park. JA34-35. While *amici* say First Bible's pro-life work "is not enough" to trigger protection, that's because *amici* both reject well-pled facts, JA31-35, and play favorites—deferring to CompassCare and NIFLA's "view of what would impair [their] expression," while denying First Bible that same respect. *Dale*, 530 U.S. at 653. This Court should not repeat *amici*'s mistake. *See id.*

### D. Plaintiffs will likely succeed in showing the Act compels expressive association as applied.

New York then says Plaintiffs will likely fail on their expressive-association claim because they did not show that "their employees" must convey the group's "message." State's Br. 41. And *amici* argue that the Act satisfies strict scrutiny at least to First Bible. Both are wrong.

### 1. The Act significantly impairs Plaintiffs' ability to promote their pro-life views.

Plaintiffs have shown that their employees must convey the group's message. Start with CompassCare. To fulfill its mission, CompassCare "only hires employees" who can "effectively convey" its pro-life "beliefs." JA68. The group's employees include board members, a president, medical directors, nurses, schedulers, receptionists, and marketers. JA70-71. Each of these employees "advances the mission of CompassCare," JA71, which includes conveying CompassCare's beliefs "to women in crisis pregnancies—both in word and in deed," JA80, 84. These employees advocate for a community "where abortion is no longer needed or wanted." JA78. And they do this by providing "support," "care," and education. JA78—responsibilities that include conveying the group's beliefs to others. JA70-72. The Act forces CompassCare to hire "messengers" who cannot credibly promote its "mission and pro-life message." JA74.

New York says CompassCare has not shown that its employees must convey the group's message, suggesting little is known about CompassCare employees and their roles. State's Br. 41-43. But CompassCare identified its employment roles that deserve protection, including board members, a president, medical directors, nurses, schedulers, receptionists, and marketers. JA70-71. And it provided summary job descriptions. Board members "set and adopt organizational policy" and "hold the organization accountable to accomplish its mission." JA70. The president

24

leads "all aspects of the organization," "educate[s] the community," and articulates the group's strategy. JA70. Medical directors oversee "all direct patient care"—ensuring such care effectively advances the group's "pro-life … purpose." JA70, 78. Nurses promote whole-person "health" and convey to clients that their "unplanned pregnancy" is "part of God's plan" for them. JA70, 78, 80, 84. Schedulers convey CompassCare's value "to women considering abortion" so these women will "schedule an appointment" and choose life for their unborn child. JA71. Receptionists promote this same expressive mission—setting a "welcoming and non-judgmental tone" when pregnant women call or visit the center. JA71. And "marketing team members" promote the group's mission to external audiences. JA70. CompassCare has shown that it requires all these employees to lead, counsel, or educate others—internally or externally—consistent with its pro-life mission.

New York similarly criticizes First Bible, State's Br. 44-45, but First Bible has also identified employees required to convey its pro-life message. It has 24 employees, including 14 pastors and directors. JA33. The church also runs two ministries—Northstar Christian Academy, which employs six administrators and 33 teachers, and Grace and Truth Athletics and Sports Park, which has 11 employees, including one director. JA104. The church requires *all* employees to promote its faith-based "mission," JA105, which includes believing and teaching "that human life

begins at conception," and defending "the sanctity of human life from conception until natural death," JA102. *All* First Bible employees promote this mission—both internally and publicly—through "a variety of events, ministries, and partnerships." JA102. Pastors, administrators, teachers, and others who lead, teach, or otherwise express First Bible's faith must do so consistent with the church's beliefs. JA103-04. These "messengers are the message in a real sense." JA106. They must "live" and "speak the truth," or else the church's mission would fail. JA106. First Bible has shown that it requires all its employees to lead, teach, or otherwise express its message consistent with its pro-life mission.

Unlike CompassCare and First Bible, NIFLA does not identify protected job roles for its 41 member centers. But this Court can decide "the scope of the injunction." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 26 (2d Cir. 2004); *see Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977) (requiring courts to "tailor 'the scope of remedy' to fit 'the … constitutional violation'") (cleaned up). No matter whether Plaintiffs expressively associate with bookkeepers, accountants, or cleaning professionals, State's Br. 45, all employees specifically identified above lead, counsel, or educate others—either internally or externally—consistent with their group's pro-life mission. By forcing Plaintiffs to hire those who must but cannot credibly express their message, the Act "severely" burdens Plaintiffs' ability to promote their pro-life views. *Slattery*, 61 F.4th at 288; *see*

*id.* at 290; *Dale*, 530 U.S. at 654-59. Plaintiffs have both identified employees required to promote their views and shown the Act significantly impairs their ability to express their message. *See* Opening Br. 18-21.

### 2. The Act fails strict scrutiny as applied.

*Amici* say the Act satisfies strict scrutiny as to First Bible. ACLU Br. 22-36. But the Act fails that test as applied to all Plaintiffs.

To satisfy strict scrutiny, New York must prove the Act is narrowly drawn to advance a compelling state interest. *Slattery*, 61 F.4th at 289 (citing *Roberts*, 468 U.S. at 623). *Amici* assert that eliminating employment discrimination is a "compelling governmental interest." ACLU Br. at 23. But the question "is not whether the [State] has a compelling interest in enforcing its non-discrimination [law] generally." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). "[B]roadly formulated interests" do not suffice. *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006). Instead, New York must show a "[compelling] interest in" coercing Plaintiffs' specific expression. *Fulton*, 141 S. Ct. at 1881. Because the Act significantly impairs Plaintiffs' speech, it requires much higher justification. *Hurley*, 515 U.S. at 577-78. New York's purported nondiscrimination interest can't override Plaintiffs' expressive freedom, *Dale*, 530 U.S. 658-59; *see* Opening Br. 22-23— just as Colorado's indistinguishable argument could not override free-speech rights in *303 Creative*.

The First Amendment protects against coerced expression no matter whether the government considers the speech "misguided," "offensive," or "hurtful." *303 Creative*, 143 S. Ct. at 2321-22; *accord Texas v. Johnson,* 491 U.S. 397, 414 (1989). This protection applies "[e]qually" to "acts of expressive association." *303 Creative*, 143 S. Ct. at 2312; *accord Dale*, 530 U.S. at 647-56; *Hurley*, 515 U.S. at 568-70. And it covers for-profit and nonprofit groups alike. *303 Creative*, 143 S. Ct. at 2312; *Dale*, 530 U.S. at 647-56. Here, the Act forces Plaintiffs to hire messengers who significantly impair the group's message. § I.D.1. While New York may deem such coercion "vital" to achieve its interest, the First Amendment ensures that "all persons are free to think and speak as they wish, not as the government demands." *303 Creative*, 143 S. Ct. at 2321-22.

But while the Act may not coerce expression, "there are no doubt innumerable" employment decisions "that no one could argue implicate the First Amendment." *Id.* at 2315. As detailed above, the State can punish "[i]nvidious … discrimination" that does not impact an employer's message, *Hishon*, 467 U.S. at 78; § I.B.3, and many groups will "lack the distinctive characteristics" necessary for "constitutional protection." *Roberts*, 468 U.S. at 621. "[T]his is entirely 'unexceptional.'" *303 Creative*, 143 S. Ct. at 2315 (cleaned up). So *amici*'s fears are unwarranted. The Act may protect Plaintiffs and still punish:

- Spas that fire pregnant women claiming they are "'less agile' and more absent" from work, ACLU Br. 30;

28

- Baseball teams that fire sales executives because they become pregnant outside wedlock, *id.*;

- Restaurants that fire waitresses because they refuse demands to "have an abortion," *id.* at 31;

- Credit unions that fire tellers for "having an abortion," *id.*; and

- Businesses that fire sales secretaries because they undergo "IVF treatments," *id.* at 32.

While some businesses may expressively associate with employees, *see IDK*, 836 F.2d at 1195 (suggesting that newspapers, concert promotors, publishers can be expressive associations); *e.g. McDermott,* 593 F.3d at 962 (newspaper and editor), nothing suggests that these businesses join with employees to speak, or that retaining the fired employee would severely impair the business's message. So contrary to *amici*'s fears, the Act can ensure "equal opportunity in employment," ACLU Br. 33, while also protecting against coerced expression.

Amici also say the Act is narrowly tailored. ACLU Br. 34-36. But a law is narrowly tailored only if it applies "the least restrictive means" to achieve its goal. *Slattery*, 61 F.4th at 289. The Act is classic overkill—covering all employers in all instances. *Id.* As *amici* show, courts must define its limits—arguing the Act cannot trump religious protection like the "ministerial exception," ACLU Br. 35, and suggesting it may only incidentally burden "no more speech" than necessary "to accomplish [its] purpose," *id.* at 36 (citing *Roberts*, 468 U.S. at 628-29). The Constitution

sets these lines; the Act does not. So *amici* defend the fit by assuming the Act does not significantly impair only First Bible's "ability" to promote "its preferred views," before saying the Act can constitutionally regulate non-expressive activity. *Id.* at 35; *see id.* at 36. But *amici*'s assumption is warranted, § I.D.1, and their textless analysis only confirms the Act lacks narrow tailoring. *See* Opening Br. 24-25. The Act fails strict scrutiny as applied to coerce Plaintiffs' expression—including First Bible's.

## II. Plaintiffs have shown the Act violates free speech.

Plaintiffs have shown that N.Y. Lab. Law § 203-e(6) unlawfully compels their speech, regulates it based on content and viewpoint, and fails strict scrutiny. Summary judgment should be affirmed.

### A. The Act compels Plaintiffs to speak.

The First Amendment protects "the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). This ensures that speakers may "choose the content of" their speech, *Hurley*, 515 U.S. at 573, and retain "control" over what they say, *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974). Section 203-e(6) violates this rule. As New York admits, § 203-e(6) forces Plaintiffs to "inform employees" that "they can make personal reproductive health decisions without" facing "adverse employment actions." State's Br. 52. The Act cannot force Plaintiffs to lie. Opening Br. 25-27.

New York says this coercion "does not raise First Amendment concerns" because government can require employers "to post notices of [employee] rights." State's Br. 49. It likens such coercion to forcing businesses to disclose "purely factual and uncontroversial" commercial information to customers, which triggers only "rational basis review." *Id.* at 50; *see id.* at 50-55 (applying *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985)). But no matter whether § 203-e(6)'s notice requirement conveys commercial information, it compels Plaintiffs to speak against their beliefs, and strict scrutiny applies when commercial speech "is inextricably intertwined with otherwise fully protected speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796 (1988). What's more, because § 203-e(6) is viewpoint-based as applied, § II.B—requiring Plaintiffs to convey the State's view—strict scrutiny applies no matter whether the notice is "commercial speech." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018); *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992); *Matal v. Tam*, 582 U.S. 218, 251 (2017) (Kennedy, J., concurring).

But even under New York's test, strict scrutiny applies. The Act does not force Plaintiffs to disclose "purely factual and uncontroversial" commercial information to their employees. State's Br. 50. It compels them to notify employees that "they can make personal reproductive health decisions without" facing "adverse employment actions." *Id.* at 52.

31

That's not factual. Because the Act cannot force Plaintiffs to employ messengers who cannot credibly convey their message, § I, telling employees they can violate Plaintiffs' rules without adverse legal consequences is false. This distinguishes New York's cases, State's Br. 50, in which plaintiffs never claim the coerced disclosure "is inaccurate." *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 114 n.4 (2d Cir. 2001); *see N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 134 (2d Cir. 2009) (Plaintiff "does not contend that disclosure … is not 'factual.'"). No matter the context, coerced lies and opinions trigger "strict scrutiny." *Id.* (citing *Ent. Software Ass'n v. Blagojevich*, 469 F.3d 641, 652 (7th Cir. 2006)).

Finally, because the Act cannot coerce Plaintiffs' expression, § I, any coerced disclosure is not "incidental to a valid" rule. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 379, 389 (1973). While in limited circumstances officials may force individuals required to engage in non-expressive conduct to provide facts necessary to facilitate that conduct—such as requiring law schools to send logistical emails containing statements of fact about military recruiters when the government requires access to law-school property, *FAIR*, 547 U.S. at 63, or forcing waiters to tell patrons the price for sandwiches when the government sets the price, *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017); *see also* Eugene Volokh, *The Law of Compelled Speech*, 97 Tex. L. Rev. 355, 389 (2018)—here, the Act compels Plaintiffs to speak a *false*

statement incidental to an *invalid* restriction on *constitutionally protected* expression. That coercion triggers strict scrutiny.

## B. The Act compels Plaintiffs to speak based on content and viewpoint.

The Act also compels Plaintiffs' speech based on content and viewpoint. *See* Opening Br. 27-28. While New York responds that the Act only forces Plaintiffs to say employees "can make personal reproductive health decisions without" facing "adverse employment actions." State's Br. 52, that proves Plaintiffs' point. The Act forces Plaintiffs to express the *government's* view about how the Act applies to them, which is a view they would otherwise not express. This "necessarily alters the content of [Plaintiffs'] speech." *Riley*, 487 U.S. at 795. New York never suggests that Plaintiffs could satisfy the Act by telling employees they will face adverse employment actions for making reproductive health decisions that severely impair the group's message. Only the State's view will do.

Blurring the issue, New York says § 203-e(6) "takes no position on abortion" and requires no employer "to address [the] subject." State's Br. 52. But Plaintiffs don't want to tell employees they "can make personal reproductive health decisions without" facing "adverse employment actions." *Id.* Just because Plaintiffs may freely express *other* views does not mean the State can force them to express *this* view. The Act suppresses a "particular view[ ]" the State disfavors. *Rosenberger v. Rector & Visitors*

*of Univ. of Va.*, 515 U.S. 819, 829 (1995). And Plaintiffs object to promoting the State's view not because it disagrees with New York's "legislative judgment," State's Br. 53, but because its view is false. And it contradicts the true message Plaintiffs want to send—that their employees' continued employment is contingent on making reproductive health decisions that align with the group's message. The Act triggers strict scrutiny because it compels speech based on content and viewpoint.

### C. The Act fails strict scrutiny as applied.

The Act's broader coercion fails strict scrutiny, § I.D.2, and its notice rule fares no better. *See* Opening Br. 29-30. The rule serves no compelling interest. While New York says it must ensure that employees are not "misled about their rights," State's Br. 56, the rule defeats that interest here because it forces Plaintiffs to mislead employees about whether they may face adverse employment actions for making reproductive health decisions that severely impair the group's message. § II.A.

What's more, the rule is "substantially underinclusive" to promote the interest. *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 197 (2d Cir. 2014). The State never argues that employers with handbooks deceive more than those without. Nor does it show their workers are less informed. And if employer silence misleads employees about the Act, State's Br. 56, then silent employers *with no handbook* mislead just as much. The State never

shows how those employers "pose a lesser risk" to its asserted interest. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam). It says instead that Plaintiffs can avoid the notice rule by tossing their handbook. JA409. Because the rule isn't needed, it serves no compelling interest.

The rule also lacks narrow tailoring. As the court below held, New York can achieve its goal better in less intrusive ways. JA409. It need not commandeer employee handbooks. Those resources convey an employer's values, mission, and beliefs. JA50-53. Employers use handbooks to convey details critical to achieving their organizational goals. While those handbooks may be enviable messengers, New York has better options. Precedent proves it. The State typically conveys workplace notices through wall décor, pamphlets, or other advertising. JA409. If those methods suffice to notify workers about other employment laws, they also suffice here. The State need not commandeer employee handbooks—and certainly not to require Plaintiffs to say the law may coerce them in ways the constitution forbids. The notice rule fails strict scrutiny.

Plaintiffs and New York agree that, if Plaintiffs succeed on their compelled-speech claim, facial relief is improper. This Court should tailor the injunction to protect Plaintiffs in this as-applied challenge.

## III. Plaintiffs plausibly allege and will likely succeed in showing the Act violates free religious exercise.

The Act also violates Plaintiffs' right to freely exercise their faith. While laws that are neutral and generally applicable sometimes trigger minimal scrutiny, *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-79 (1990), laws that lack these features require at least strict scrutiny. *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993) (strict scrutiny); *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1732 (2018) (per se rule). Because the Act is not neutral or generally applicable, it triggers at least strict scrutiny.

The Act's notice rule does not apply to all employers. Only those with "an employee handbook" must provide the required notice. N.Y. Lab. Law § 203-e(6). Employers without a handbook need provide no notice. New York says this rule triggers only rational-basis review because it applies to "all employers who use handbooks," even those who are "secular." State's Br. 59. But it's "no answer that" the rule "treats some comparable secular [groups] … as poorly as or even less favorably than" Plaintiffs. *Tandon*, 141 S. Ct. at 1296.

 "Comparability" views the "risks various activities pose." *Id.* "[W]hether two activities are comparable … must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Here, New York says the notice rule ensures employees are not misled about their rights. State's Br. 56. But employers with no handbook can

36

remain silent on the Act and mislead employees just as much as those with a handbook. § II.C. Because this broad exemption threatens New York's interest to a "greater degree than" Plaintiffs' religious exercise, the Act cannot punish Plaintiffs for obeying their faith. *Lukumi*, 508 U.S. at 543; *see Tandon*, 141 S. Ct. at 1296.

The Act fails strict scrutiny as applied because it isn't necessary to achieve an interest "of the highest order." *Fulton*, 141 S. Ct. at 1881. If New York "can achieve its interests" through means that do not "burden religion, it must do so." *Id.* Here it can. Because the State's interest is safe when employers without handbooks provide zero notice of the Act, it will remain safe when allowing three religious groups to obey their faith. § II.C. Plaintiffs plausibly allege and will likely succeed in showing the Act violates their right to freely exercise their faith.

## IV. The remaining injunction factors favor Plaintiffs.

The loss of First Amendment rights "for even minimal periods" of time imposes "irreparable injury." *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996) (cleaned up); *accord Tunick v. Safir*, 209 F.3d 67, 70 (2d Cir. 2000). So here, "the likelihood of success on the merits is the dominant" or even "dispositive" factor. *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Plaintiffs have made that showing. §§ I-III. But the balance of equities strongly favors them anyway. *See*

Opening Br. 33-34. New York does not contest that this balance favors Plaintiffs.

## V.  This Court should order the requested injunction.

This Court may order a preliminary injunction when it has "enough solid facts [in] the record" to "render a decision." *English v. Town of Huntington*, 448 F.2d 319, 321 (2d Cir. 1971). This record provides those facts. *See* Opening Br. 34-35. Delaying injunctive relief would continue to harm Plaintiffs' constitutional interests and force them to continue risking costly damages, and attorney fees. Other courts issue injunctions in the first instance when constitutional freedoms are at stake and no party disputes facts. *See id.* Plaintiffs ask this Court to do that here.

## CONCLUSION

It is axiomatic that people tend to act and speak like those with whom they associate. That's why even secular businesses take so seriously the cultural fit of the employees they hire.

When a nonprofit's message is coextensive with its "business"— as is the case for Compass Care, NIFLA, and First Bible—then forcing the hiring and retaining of individuals whose actions contradict the message is fatal to the mission and ultimately the organization itself. Organizational effectiveness requires employees to "walk the talk," not contradict it. And the First Amendment forbids the government from coercing such

employers to hire dissenters while protecting organizations from being compelled to speak the government's contrary message.

Plaintiffs incur harm and risk costly lawsuits every day they're left unprotected. This Court should (1) affirm the summary judgment, (2) reverse the dismissal, and (3) enter the requested injunction or direct the trial court to do so on remand.

Respectfully submitted,

*/s/ Jacob P. Warner*

KEVIN H. THERIOT
JACOB P. WARNER
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
ktheriot@ADFlegal.org
jwarner@ADFlegal.org

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Ste. 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

JAMES P. TRAINOR
TRAINOR LAW, PLLC
2452 US Route 9, Suite 203
Malta, NY 12020
(518) 899-9200
james@trainor-lawfirm.com

*Counsel for Appellants/Cross-Appellees*

August 7, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Jacob P. Warner
Jacob P. Warner

# CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Local Rule 28.1.1(a) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 8,678 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Jacob P. Warner*
Jacob P. Warner
*Counsel for Appellants/Cross-Appellees*

Dated: August 7, 2023